.HAWTHORNE, Justice.
 

 ■ On the afternoon of January 19, 1951, a frame dwelling owned by Paul J. Leaman was damaged by fire. The plaintiffs in the instant case are two insurance companies which instituted this suit as subrogees of the owner to recover the amounts paid by them to the owner under fire insurance policies written by them on the Leaman dwelling. The amount sought by plaintiff Northwestern Mutual Fire Association is $4,082.97, and the sum asked by plaintiff Badger Mutual Insurance Company is $2,721.98.
 

 Plaintiffs in their petition allege that the owner of the dwelling entered into an oral contract with defendant George R. Allain to burn off all the paint on the building and apply three coats of paint to it, and that defendant Allain employed defendant Denaud Roudeze to assist in the performance of the contract. It is further alleged that the fire which damaged the building occurred while the work was being performed under this contract. After trial on the merits the lower court rendered judgment in favor of Northwest Mutual Fire Association against Allain and Roudeze individually and in solido in the sum of $2,686.38, and in favor of Badger Mutual Insurance Company against these defendants individually and in solido in the sum of $1,790.-92. The defendants appealed from this judgment.
 
 [1]
 

 On January 19, 1951, while-two workmen of defendant Roudeze were using a blowtorch to remove paint from Leaman’s frame dwelling, the house
 
 caught
 
 fire. The two workmen and defendant Roudeze tried to put the fire out. Unable to do so, they called the fire department, and the blaze was extinguished after having caused considerable damage to Leaman’s house.
 

 Plaintiffs concede that they can be successful in this tort action only if they can show that the doctrine of res ipsa loquitur applies to the case. This court has pointed out in numerous decisions that res ipsa loquitur is a rule of evidence, the applicability of which is to be determined in each case at the conclusion of the trial. When the doctrine of res ipsa loquitur is applicable to a case, the accident which has caused plaintiff^ damage makes out a prima facie case of negligence on the part of the defendant, and the burden is then on the defendant to show absence of negligence on his part. See Lykiardopoulo v. New Orleans & C. R., Light & Power Co., 127 La. 309, 53 So. 575; Dotson v. Louisiana Central Lumber Co., 144 La. 78, 80 So. 205; Jones v. Shell Petroleum Corporation, 185
 
 *793
 
 La. 1067, 171 So. 447; Ortego v. Nehi Bottling Works, 199 La. 599, 6 So.2d 677; Gerald v. Standard Oil Co., 204 La. 690, 16 So.2d 233; Hake v. Air Reduction Sales Co., 210 La. 810, 28 So.2d 441; Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704, 3 A.L.R.2d 1437; Roy v. Louisiana State Department of Agriculture and Immigration, 216 La. 699, 44 So.2d 822.
 

 Cases involving injuries inflicted on the plaintiff hy steam, electricity, fire, gas, complicated industrial machinery, and other dangerous instrumentalities furnish the clearest instances of the use of the doctrine of res ipsa loquitur. See Malone, Res Ipsa Loquitur and Proof by Inference- — A Discussion of the Louisiana Cases, 4 La.L. Rev. 70, 95. It is well established in the Louisiana jurisprudence that the doctrine of res ipsa loquitur must be applied to a case if the accident which damaged plaintiff was caused by an agency or instrumentality within the actual or constructive control of the defendant, if the accident is of a kind which ordinarily does not occur in the absence of negligence, and if the evidence as to the true explanation of the accident is more readily accessible to the defendant than to the plaintiff. See cases cited above.
 

 It is an established fact that a gasoline blowtorch produces intense heat and is a highly dangerous instrumentality when used to remove paint from a frame dwelling, especially if the torch is not properly handled. There is no possible doubt in the instant case that the fire which damaged Leaman’s house was caused by a blowtorch in the hands of one of defendant Roudeze’s workmen. In fact, the defendants themselves do not seriously contend that the fire originated from some other cause. Moreover, the blowtorch which caused the fire was at all times under the exclusive control of these workmen, and Roudeze and his two men were the only persons present when the fire broke out, spread, and got out of control. Therefore it is obvious that the fire which caused plaintiffs’ damage in the instant case was caused by a dangerous instrumentality within the control of the defendants, and that therefore the evidence as to the true explanation of the accident is more readily accessible to defendants than to plaintiffs.
 

 Defendants argue, however, that the ' testimony of two expert witnesses at the trial shows that setting a frame dwelling on fire with a blowtorch is .an accident which can occur in the ordinary course of events and in the absence of negligence, and that therefore the doctrine of res ips.a loquitur cannot be applied to the instant case.
 

 The record in this case does not support defendants’ contention. One of the experts relied on by defendants did testify that no matter how much precaution and care is used a fire can still be started by the use of a blowtorch. However, this witness also testified that as a contractor and a journeyman painter he had removed paint from a great many dwellings with a blowtorch
 
 *795
 
 over a period of 29 years, that in all these years he had had only three or four experiences where fire had occurred, and that these fires were caused by the workmen’s using the torch over undetected cracks. The other expert witness had been in the contracting business for about 22 years, had had a great deal of experience in supervising the removal of paint with a blowtorch, and was thoroughly familiar with the proper use of the torch. He testified that under his supervision the paint had been burned off hundreds of houses with a blowtorch and that of these houses only two had caught fire. He stated that fires resulting from the use of a blowtorch are unusual where the proper precautions are taken, and that he did not even consider a blowtorch a dangerous instrumentality if properly used.
 

 The testimony of the two workmen who were removing paint by blowtorch from Leaman’s house when the fire occurred is also fatal to defendants’ contention that fires occur frequently even when a blowtorch is properly used. One of the men stated that he had been a painter for 20 years, had had much experience in burning off paint, and had never had a house catch fire while he was working on it. The other workman said he had been burning off paint for about 17 years and had never had any fire where he was working. Thus it is obvious that the testimony of the two expert witnesses and of Roudeze’s own workmen does not support defendants’ contention. On the contrary it establishes beyond question that the fire in the instant case would not ordinarily have occurred in the absence of defendants’ negligence.
 

 Therefore, as the blowtorch which caused the fire was under the exclusive control of defendant Roudeze’s workmen, and as the accident is one which does not ordinarily occur in the absence of negligence, it is clear that the doctrine of res ipsa loquitur applies to this case.
 
 [2]
 
 Since this doctrine is applicable here, the sole remaining question is whether these defendants have overcome the resulting inference that their negligence started the fire and allowed it to spread.
 

 The experts who testified in this case both agreed that the removal of paint by blowtorch is a hazardous undertaking, and that certain precautions are essential if accidents are to be avoided. They agreed that the flame should always be pointed downward and never held long in one spot or too close to the wood. They also pointed out that the paint should never be burned off near a crack or hole because the flame
 
 *797
 
 might enter the crack or hole undetected and ignite cobwebs or rotten wood within the walls of the structure. Moreover, they stressed the fact that water or a fire extinguisher should always be available in case fire should break out.
 

 The two experienced workmen who were engaged in removing paint from Leaman’s dwelling at the time of the fire in the instant case testified that in removing the paint from the dwelling they had observed all of the customary precautions mentioned above. Their testimony is the principal evidence which the defendants offered to overcome the inference of negligence on their part, and we must decide whether this evidence is sufficient to overcome that inference.
 

 Upon analysis it is obvious that all that these defendants have done is offer evidence of reasonable care on their part. In discussing the value of this type of evidence in overcoming the inference of negligence in a res ipsa loquitur case Prosser has the following to say:
 

 “But if the defendant merely offers evidence of his own acts and precautions amounting to reasonable care, it is seldom that a verdict can be directed in his favor. The inference from the circumstances remains in the case to contradict his evidence. If he testifies that he used proper care to insulate his wires, to inspect his chandelier, to drive his bus, or to keep defunct mice and wandering insect life out of his bottled beverage, the fact that electricity escaped from the wires, that the chandelier fell, that the bus went into the ditch and the bug was in the bottle, with the background of common experience that such things do not usually happen if proper care is used, may permit reasonable men to find that his witnesses are not to be believed, that the precautions described were not sufficient to conform to the standard required or were not faithfully .carried out, and that the whole truth has not been told.” Prosser, Handbook of the Law of Torts (1941), p. 309.
 

 It is also well established in the Louisiana jurisprudence that this type of evidence is not sufficient to overcome the inference of negligence in cases involving the doctrine of res ipsa loquitur. See Ortego v. Nehi Bottling Works, supra; Hake v. Air Reduction Sales Co., supra; Plunkett v. United Electric Service, supra.
 

 Moreover, it is extremely doubtful whether all of the essential precautionary.measures were observed by the two workmen in the case at bar, particularly those measures requiring them to have readily available a means for extinguishing any fire which might break out. Both of the men testified that water was available. However, it is impossible • to discover from the record whether water was available in the form of a connected hose, a bucket of water, or both, or perhaps neither. The testimony of the two workmen and of defendant Roudeze
 
 *799
 
 is so conflicting and vague as to what happened after the fire was discovered that it is not clear whether or not the men were able to apjply water to the blaze, nor is it possible to determine how much time elapsed between the discovery of the fire and the calling of the fire department. It is readily apparent, therefore, that the testimony of defendants’ witnesses on this point is in hopeless conflict and cannot be reconciled or relied on.
 

 After weighing all of the testimony in this case, we are of the opinion that defendants have failed to overcome the inference of negligence -on their part. We conclude therefore that the fire which damaged Leaman’s house was caused by some negligence on the part of Roudeze’s workmen in the use of the blowtorch, and that failure to observe the proper precautions for the extinguishment of the blaze caused the fire to spread and damage the dwelling.
 

 Plaintiffs answered the appeal taken by defendants, praying that the amount of the judgment be increased to the full amount sought in their petition. The amount of damages given to plaintiffs by the trial judge was computed on the theory that a homeowner can recover from a tortfeasor who has damaged his house only the cost of repairs minus an allowance for depreciation. Plaintiff insurers contend that the trial judge erred in allowing depreciation in determining the amount they are to receive and contend that they are entitled to recover from defendants the full amount that they were required to pay to Leaman under their respective contracts of insurance, which are the amounts for which they prayed.
 

 There is no merit in plaintiffs’ argument. Plaintiffs are suing in tort as subrogees of an owner whose home was damaged through defendants' negligence. Therefore plaintiffs’ rights in this case are no greater than the rights of the owner of the damaged dwelling, and plaintiffs are entitled to recover only the amount which the owner Leaman could have recovered from these defendants. As defendants are liable in tort to the owner only for the actual damages occasioned by their negligence, this is also the extent of their liability to plaintiffs, and the fact that plaintiffs paid the owner under their respective contracts of insurance sums of money which were in excess of the amount of the judgment rendered herein is immaterial.
 

 The case of Appalachian Corporation v. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539, relied on by the plaintiffs in support of their proposition that they are entitled to full indemnification for the amounts paid by them to the owner under their respective insurance contracts, is not pertinent to the instant case. The Appalachian case is authority for the proposition that a joint tortfeasor who was only technically or constructively at fault can recover from the joint tortfeasor who was actually at fault. It is obvious that these plaintiffs are not
 
 *801
 
 joint tortfeasors who have been held to be technically or constructively at fault.
 

 Thus it is our conclusion that the trial judge properly considered depreciation in determining the amounts which plaintiffs are entitled to recover.
 

 For the reasons assigned the judgment appealed from is affirmed, appellants to pay all costs.
 

 HAMITER, J., did not participate.
 

 [1]
 

 . Judgment was also awarded the defendant Allain on a call in warranty against the defendant Roudeze, but no complaint of this award is made on this appeal, and it is not an issue in the case.
 

 [2]
 

 . The requirement that the evidence as to the true explanation of the accident be more readily accessible to the defendant than to the plaintiff follows logically from the finding that the instrumentality which caused the accident was at all times within tlie actual control of the defendants. The better view, therefore, is that this third requirement is superfluous under' these circumstances. See Prosser, Handbook of the Law of Torts (1941), p. 291.