133 So.2d 172 (1961)
MARYLAND CASUALTY COMPANY
v.
Louis J. RITTINER et al.
No. 148.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1961.
Rehearing Denied October 9, 1961.
Certiorari Denied October 27, 1961.
Robert E. Leake, Jr., of Faris, Leake & Emmett, New Orleans, for defendants-appellants.
Loeb & Livaudais, Marcel Livaudais, Jr., New Orleans, for plaintiff-appellee.
Before McBRIDE and YARRUT, JJ., and HALL, J. pro tem.
YARRUT, Judge.
This suit involves liability of an owner causing damage to his neighbor as a result of work the former was doing on his property.
*173 Defendants-Appellants are the owners (Louis J. and Roy O. Rittiner) and their insurer. The Plaintiff-Appellee is the subrogated insurer of the adjoining owner (Malcolm Coco).
While Appellants (Rittiner brothers) were in the process of erecting their own building, a flash-fire occurred when two of their workmen were pouring hot liquid tar into a shower stall. The structure caught fire and spread to the adjoining building recently erected by Malcolm Coco, operative builder and contractor, causing serious fire and water damage.
Plaintiff, as insurer of Coco, paid him $9000 for the loss, and was subrogated to his claim against Appellants.
Judgment was rendered in solido for $5000 against all Defendants, because Defendant-insurer's policy limit was only $5000; and an additional judgment against Defendants (Rittiner brothers) for $2000, or for a total of $7000. All Defendants appealed and Plaintiff answered for an increase of the award to $9000.
The issues presented are quantum, and whether the liability vel non of Rittiner brothers is absolute with or without fault, under LSA-C.C. Art. 667; or under LSA-C.C. Art. 2315, requiring fault to fix liability. The record discloses these facts:
Two of Rittiner brothers' laborers took a bucket of hot asphalt and poured it into a shower stall. The superintendent, in charge, was not present at the occurrence but testified he knew from experience that asphalt when overheated could ignite. Since he was not present when the first bucket of asphalt was poured, he was not aware of the manner it was preheated or to what degree. One of the laborers ran from the fire in fear. Of the two carpenters who were on or about the job site, one said nothing, and the other was helpless because the fire was too hot. Someone tried unsuccessfully to throw sand on the fire and to wet it with a garden hose. There was neither fire extinguisher present nor any other fire prevention safeguards. The fire was of such proportion that it could not be controlled, and it spread to the adjacent Coco premises.
The superintendent, under cross-examination, testified as follows:
"Q. Was this asphalt that you were using? A. Yes, sir.
"Q. Had you used it before and were you experienced with it? A. Yes, sir; in every house we have used it.
"Q. Is it easily ignited? A. Well, it ignites sometimes, yes.
"Q. Is it dangerous to use? A. Not if you're careful. I have poured 900 jobs with the same material.
"Q. What are some of the things that might cause it to ignite? A. That's one thing I couldn't answer; it's just one of those things.
"Q. But you do know that it does ignite from time to time? A. Yes, sir."
Plaintiff contends first that, as Rittiner brothers were doing the work as owner, they are either liable without proof of fault, under LSA-C.C. Art. 667, or under the res ipsa loquitur doctrine per LSA-C.C. Art. 2315.
In Northwestern Mutual Fire Association v. Allain, 226 La. 788, 77 So.2d 395, 397, 49 A.L.R.2d 362, a fire damage case similar to the instant case, our Supreme Court held:
"Cases involving injuries inflicted on the plaintiff by steam, electricity, fire, gas, complicated industrial machinery, and other dangerous instrumentalities furnish the clearest instances of the use of the doctrine of res ipsa loquitur. See Malone, Res Ipsa Loquitur and Proof by InferenceA Discussion of the Louisiana Cases, 4 La.L.Rev. 70, 95. It is well established in the Louisiana jurisprudence that the doctrine of res ipsa loquitur must be applied to a *174 case if the accident which damaged plaintiff was caused by an agency or instrumentality within the actual or constructive control of the defendant, if the accident is of a kind which ordinarily does not occur in the absence of negligence, and if the evidence as to the true explanation of the accident is more readily accessible to the defendant than to the plaintiff. * * *
"It is an established fact that a gasoline blowtorch produces intense heat and is a highly dangerous instrumentality when used to remove paint from a frame dwelling, especially if the torch is not properly handled. There is no possible doubt in the instant case that the fire which damaged Leaman's house was caused by a blowtorch in the hands of one of defendant Roudeze's workmen. In fact, the defendants themselves do not seriously contend that the fire originated from some other cause. Moreover, the blowtorch which caused the fire was at all times under the exclusive control of these workmen, and Roudeze and his two men were the only persons present when the fire broke out, spread, and got out of control. Therefore it is obvious that the fire which caused plaintiffs' damage in the instant case was caused by a dangerous instrumentality within the control of the defendants, and that therefore the evidence as to the true explanation of the accident is more readily accessible to defendants than to plaintiffs." See also Langlinais v. Geophysical Service, Inc., 237 La. 585, 111 So.2d 781.
In Fontenot v. Magnolia Petroleum Company, 227 La. 866, 80 So.2d 845, 849, the Court said, in applying the doctrine of liability without fault under LSA-C.C. Art. 667:
"* * * We are unwilling to follow any rule which rejects the doctrine of absolute liability in cases of this nature and prefer to base our holding on the doctrine that negligence or fault, in these instances, is not a requisite to liability, irrespective of the fact that the activities resulting in damages are conducted with assumed reasonable care and in accordance with modern and accepted methods.
"* * * To hold otherwise would grant the right to conduct operations of a nature as is here involved, and upon its being shown that such activities are conducted in full accord with accepted modern methods, no liability may attack therefor in favor of persons injured." See also Gotreaux v. Gary, 232 La. 373, 94 So.2d 293.
From the above jurisprudence and the evidence here, Rittiner brothers have dual liability: (1) As owners under LSA-C.C. Art. 667 and (2) as tortfeasors under LSA-C.C. Art. 2315, under the doctrine of res ipsa loquitur.
On the question of quantum, Plaintiff claims the $9000 it paid as insurer. In support of its claim it offered the testimony of its adjuster, with 30-years experience as such, who testified that the building was damaged about 75%; and a competent general contractor, with years of experience, that it would cost $9000 to restore. The adjoining contractor-owner (Coco) testified his building cost was $10,696.03, in mass construction, plus a $4000 lot, or a total of $14,696.03, and the whole was selling on the market to home-buyers for $18,500. Coco further testified he sold the damaged home for $11,500, and the buyer repaired and occupied it as his residence. Defendants contend that, since the purchaser repaired the premises for only a few hundred dollars, that was the extent of the loss.
Irrespective of what was the estimated cost of repairs and per cent of damage as made by the independent contractor and insurance adjuster, the undamaged house, worth $18,500 on the market, was sold for $11,500 in its damaged condition, thus fixing the loss actually suffered at $7000, *175 the amount awarded by the District Court. How the Plaintiff and its insured settled the loss between them because of the insurer's limited liability, is of no concern to Defendants.
Ordinarily, the obligation of one who has damaged another's property, is to restore it to its former condition, regardless of market value. Had Plaintiff's insured elected to repair the structure, there could be no question of Defendants' obligation to pay for the reasonable cost of repairs; but since the insured sold the damaged structure, he could not expect to recover from Defendants any more than the difference between the value before the fire and the amount received for it in its damaged condition. Kotteman Furniture Co. v. McLellan, La.App., 2 So.2d 485; and authorities cited therein.
The judgment of the District Court therefore is affirmed; costs to be paid by Defendants-Appellants.
Affirmed.