CULPEPPER, Judge.
'Plaintiff, National Surety Corporation, brings this suit as subrogee of its assured, W. R. Aldrich & Company, to recover the amount paid by plaintiff to repair an Allis-Chalmers front end loader. Plaintiff alleges this equipment was damaged in a fire caused by the negligence of an employee of Evangeline Ironworks, Ltd., who was welding a broken part on the loader at the time it caught fire. From a lower court judgment awarding plaintiff the sum of $1,398.35, the defendant appealed.
The principal issues are whether the doctrine of res ipsa loquitur is applicable and if so, has the defendant sustained its shifted burden of showing that its welder was free of negligence.
The facts show that on October 22, 1960, at about 8:30 a. m. Aldrich was using the loader to fill a ditch on a construction job when the hydraulic arm near the front end broke. Aldrich’s foreman phoned Evangeline Ironworks, Ltd. who sent their welder, *440 Alfred J. Landry, to make the necessary repairs at the job site. When Landry arrived the foreman pointed out to him the repair work that had to be done and Landry started to work. We are satisfied the evidence shows that both the foreman and the operator of the loader left this piece of equipment in Landry’s care for the welding operation.
Landry first had to “wash off” the old weld, a process which requires the use of a cutting torch generating great heat and causing red hot pieces of metal and sparks to fly out several feet in all directions. This procedure took about 15 minutes, after which Landry started applying the new weld with an electric arc. Landry testified that he had been working with the arc only a few minutes when he looked to the rear of the tractor and saw that the fabric seat, and the diesel fuel tank underneath, were engulfed in flames. It was enough of a fire that Landry was afraid to try to put it out by himself. About that time the operator of the loader, Charles Griffin, returned and saw the fire and they both ran to find the foreman. When they returned they tried to extinguish the fire with dirt and water. Being unable to do so they called the Lake Charles Fire Department who came and put out the fire in a few minutes by the use of chemicals.
The initial issue is whether the doctrine of res ipsa loquitur is applicable. In the recent case of Langlinais v. Geophysical Service, Inc., 237 La. 585, 111 So.2d 781 our Supreme Court has described this doctrine as follows:
“As stated in the comparatively recent case of Northwestern Mutual Fire Association v. Allain, 226 La. 788, 77 So. 2d 395, 396, 49 A.L.R.2d 362, ‘ * * * res ipsa loquitur is a rule of evidence, the applicability of which is to be determined in each case at the conclusion of the trial. When the doctrine of res ipsa loquitur is applicable to a case, the accident which has caused plaintiff’s damage makes out a prima facie case of negligence on the part of the defendant, and the burden is then on the defendant to show absence of negligence on his part. * * *
“ ‘Cases involving injuries inflicted on the plaintiff by steam, electricity, fire, gas, complicated industrial machinery, and other dangerous instrumentalities furnish the clearest instances of the use of the doctrine of res ipsa loquitur. * * * It is well established in the Louisiana jurisprudence that the doctrine of res ipsa loquitur must be applied to a case if the accident which damaged plaintiff was caused by an agency or instrumentality within the actual or constructive control of the defendant, if the accident is of a kind which ordinarily does not occur in the absence of negligence, and if the evidence as to the true explanation of the accident is more readily accessible to the defendant than to the plaintiff.’ See also Lykiardopoulo v. New Orleans & C. R., Light & Power Company, 127 La. 309, 53 So. 575, Hake v. Air Reduction Sales Company, 210 La. 810, 28 So.2d 441 and Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704, 3 A.L.R.2d 1437.”
All of the requirements for the application of res ipsa loquitur are present here. This case involves a dangerous instrumentality, i. e., a cutting torch and welding arc, which generate tremendous, heat, were being used on a piece of machinery using diesel fuel of a highly flammable nature. The fabric seat and fuel tank were only about six feet from where Landry was welding. Furthermore, the instrumentality was under the actual control of Landry at the time the fire started so that he was in a position to have superior knowledge of the cause of the flame. The fact that-the loader was on the construction site,, rather than in defendant’s shop, does not negative control by Landry. Aldrich’s employees had left the scene and Landry alone was in control and in a position to have knowledge of the cause of the accident. *441 Also, it is apparent that this accident is of a kind which ordinarily does not occur in the absence of negligence. The spark which started the fire had to come from somewhere. There is no evidence of any other spark or cause of ignition of the fire, except the welding torch.
Accordingly, we find the doctrine applicable. The burden is then on the defendant to show absence of negligence on its part. In an attempt to meet this burden, the defendant introduced the testimony of Captain LaRocca of the Fire Department, who stated that from his cursory investigation after the fire he opined it was a fuel fire and that it was caused by a fuel leak in the tank or the fuel lines leading from the bottom of the tank. However, LaRocca stated that the leak, which he found after the fire, could have been caused by the extreme heat generated during the fire.
Mr. Charles Griffin, who had operated the loader that morning, and for several days previously, testified positively that there was no such leak before the fire and if there had been he would have known of it.
Under the circumstances we find no manifest error in the finding of fact of the trial judge that defendant has failed to sustain its burden of proving there was a fuel leak before the fire. In the absence of sufficient proof that a leak existed, we are not called upon to decide whether Aldrich’s employees knew or should have known of such a leak or should have warned Landry of a fuel leak before he started the welding.
Defendant also questions the sufficiency of plaintiff’s proof of the amount of damage to the loader. The only witness to testify in this regard was Mr. Armstrong, an insurance adjuster of several years experience. This witness stated that he personally inspected the tractor on three different occasions. He obtained a parts and price list and, with the assistance of Aldrich’s master mechanic, determined what parts had to be replaced and what labor was needed. He concluded that the sum of $1,398.35 represented the true cost of repairs. Unfortunately the mechanic who assisted Mr. Armstrong, was killed in an accident before the trial.
Under these circumstances it is our opinion that the trial judge correctly admitted in evidence the testimony of Mr. Armstrong. See Calvert Fire Ins. Co. v. Grotts, La.App., 136 So.2d 836 for a similar holding that an estimate of the cost of repairs carefully prepared by an experienced adjuster, is admissible. In the absence of any evidence by defendant to the contrary we find the trial judge was justified in accepting Mr. Armstrong’s estimate.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.