212 So.2d 506 (1968)
Elton M. EVANS, Plaintiff-Appellant,
v.
The TRAVELERS INSURANCE COMPANY et al., Defendants-Appellees.
No. 7426.
Court of Appeal of Louisiana, First Circuit.
July 1, 1968.
Parker & French, Baton Rouge, for appellant.
David M. Ellison, Jr., of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for Travelers Ins. Co. and Virginia Chemicals, Inc.
Ben W. Lightfoot, of Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for Atlas Refrigeration, Inc.
Before LANDRY, REID and BAILES, JJ.
BAILES, Judge.
This is an appeal from judgment adverse to the plaintiff, Elton M. Evans, who instituted suit ex delicto against Virginia Chemicals, Inc. (Virginia), its products liability *507 insurer, The Travelers Insurance Company, and against Atlas Refrigeration Supplies, Inc. (Atlas), to recover damages allegedly sustained by him when a can of automotive refrigerant known as Freon-12 packaged by Virginia exploded while plaintiff was in the process of inducing it into an air conditioning system of an automobile. We find no error in the judgment of the trial court, and accordingly, it is affirmed.
Occasionally, plaintiff, an experienced refrigeration mechanic, repairs air conditioning units at his home. On May 14, 1965, plaintiff purchased one case of "Freon 12" from Atlas. The case, unopened and apparently undamaged, contained twelve, 15 ounce cans of freon packaged by Virginia. The freon was brought from E. I. du Pont De Nemours, Chemical Division, and packaged and distributed by Virginia in their patented container under the trade name of "Can-O-Gas." The container is manufactured for Virginia by Crown Manufacturing Company. Plaintiff took this case of freon to his home and placed it in his garage. Several hours later a friend, Mr. Harold Smith, brought his automobile to plaintiff's home to have his air conditioner repaired. Upon inspection plaintiff determined that the unit was low on freon. In order to introduce the required freon into the unit he attached his charging and testing refrigeration manifold to the air conditioning compressor.
This manifold consists of a housing for two main valves to which two gauges and three rubber hoses or lines are connected. In order to charge an air unit with freon the manifold is connected to the unit in the following manner; the left hand hose (as one faces the instrument) is attached to the intake, suction or low pressure side of the air conditioning compressor and the right hand hose to the discharge or high pressure side. With the two main valves closed the high and low pressures created by the compressor are shown on the respective gauges. The container of freon is connected to the third or center hose and a small valve connected to the container is opened to allow the pressure in the container to force the freon through this hose. To introduce the freon into the unit the left hand or intake valve must be opened, at which time the intake pressure pulls the freon from the center line, through the left hand valve opening and into the compressor. The intake pressure is reflected on the low pressure gauge while any increase in head pressure is reflected on the other or high pressure gauge. It must be noted that according to expert testimony the right hand or high pressure valve on the manifold should not be opened during this operation for to do so would allow a pressure amounting to at least 200 pounds psi to escape from the compressor into the center hose and into the freon container.
After attaching his manifold to the air conditioning compressor plaintiff opened the case of freon and removed one can. He connected it to the center manifold hose and charged it into the system. Deciding that more freon was required plaintiff took another "Can-O-Gas" from the case, connected it to the center hose and opened the valve allowing the freon to move into the line. He held the can of freon and the center hose in his left hand and reached to the manifold with his right hand to open the valve to allow the freon to enter the compressor. Just as he cracked the valve the can exploded and hit him in the neck causing a severe laceration.
The question presented is that of fault, the occasion and result of the explosion not being contested. Plaintiff argues that the explosion was caused by a defect in the "Can-O-Gas" and urges application of the doctrine of res ipsa loquitur to raise an implication of negligence against either or both Virginia and Atlas. It should be noted at this time that no evidence was offered by plaintiff relative to negligence on the part of Virginia in the design, engineering or manufacture of the offending "Can-O-Gas" or on the part of Atlas in the handling, storage or sale without warning *508 on the case of freon. Thus, plaintiff's case must fail unless negligence can be inferred through the doctrine of res ipsa loquitur.
There are conditions precedent to the application of this doctrine. Pertinent here is the requirement that the damage to plaintiff be caused by "* * * an agency or instrumentality within the actual or constructive control of the defendant * *." Northwestern Mutual Fire Ass'n v. Allain, 226 La. 788, 77 So.2d 395, 397, 49 A.L.R.2d 362. An exception to this requirement has been recognized when, though defendant does not retain possession of the instrumentality of injury, plaintiff is able to show that those through whose hands it passed from the time of manufacture until the time of injury were in no way negligent in their control or handling of the article. Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704, 3 A.L.R.2d 1437.
Plaintiff was unable to offer sufficient proof to bring his cause within the scope of this exception. Though the record shows that the case of freon from which plaintiff took the can which exploded was sealed and evidenced no sign of unusual handling immediately prior to the accident, plaintiff did not produce a preponderance of evidence showing that his handling of the "Can-O-Gas" was free from fault.
The record establishes that freon is non-flammable and will not explode of its own accord. However, a "Can-O-Gas" could be caused to explode by excess pressure, either introduced into the can from an external source or created by exposure of the can to heat in excess of 130 degrees Fahrenheit which would result in a rise of the pressure in the can to 181 pounds psi. It was the opinion of the expert witnesses called for both sides and of plaintiff himself that after the manifold was attached to the air conditioning compressor and the freon container only the low pressure valve should be manipulated. The reason is that if the high pressure valve were opened a pressure estimated by the expert witnesses to be approximately 200 pounds psi in this instance would be allowed to enter the "Can-O-Gas" which was built and tested to withstand only 180 pounds of pressure psi and which bore warnings to that effect.
Plaintiff testified that when he had made the connections necessary to charge the second can of freon into the air conditioning unit he reached up with his right hand and opened the left hand or low pressure valve, at which instant the can exploded. This account was corroborated by Mr. Smith, though he admitted his view was partially obstructed. Plaintiff's son testified that after the explosion he heard a hissing noise in the area of the manifold so he turned the high pressure valve handle, the low pressure handle having been knocked off by the explosion. He said, however, he did not know whether the high pressure valve was in fact open. Plaintiff thus contends that he did not mishandle the "Can-O-Gas" and concludes that the accident must have been caused by a defect in the can.
Defendant introduced expert testimony which established the following uncontroverted facts. Each "Can-O-Gas" put on the market by Virginia Chemicals is subjected to and meets Interstate Commerce Commission specified tests which, in the main, consist of water baths which heat the cans to 130 degrees Fahrenheit and raise the pressure to 181 pounds psi. When examined the metal of the can which exploded was found to be of the proper thickness and showed no sign of having been overheated or of unusual softness. Finally, visual examination of the can showed that separation of the bottom of the can from the body was uniform thus negativing the possibility of a defect in the seam by which the bottom was attached to the molded body of the can. On the basis of these facts, defendant's experts reached the conclusion that the can was caused to burst by excess pressure introduced from an external source.
*509 The evidence offered by plaintiff to prove his lack of fault in handling the "Can-O-Gas" was not of sufficient weight to preponderate over the facts established by defendant relative to this point. As such plaintiff has failed to bear the burden of bringing his case within the scope of the doctrine of res ipsa loquitur.
We are supported in this conclusion by the principle announced in Morales v. Employers' Liability Assurance Corp., 202 La. 755, 12 So.2d 804, that when the evidence allows the conclusion that the accident may be attributable to causes other than negligence on the part of the defendant the reason for application of res ipsa loquitur fails and it cannot be invoked. It appears extremely plausible that the accident herein could have as well been caused by action on plaintiff's part as by negligence on the defendants. In fact, in consideration of the tests to which each can of gas is subjected in its packaging, and the inherent nature of the gas, it appears more plausable that the accident was caused by action on the part of the plaintiff. Having otherwise failed to prove Virginia Atlas at fault, plaintiff's cause was properly dismissed.
It must be noted in conclusion that plaintiff alleged breach of warranty on the part of the two main defendants. As heretofore discussed plaintiff proved no defect in the product he purchased and it is sufficient to state that our jurisprudence does not support plaintiff's contention that a manufacturer is strictly liable in cases of this nature. See, D'Allesandro v. Edgar Murray Supply Company (La.App.1966) 185 So.2d 34; and Meche v. Farmers Drier & Storage Company (La.App.1967) 193 So.2d 807.
For the foregoing reasons the judgment appealed from is affirmed, all costs to be paid by appellant.
Affirmed.