HOOD, Judge.
The plaintiff, Connecticut Fire Insurance Company, as subrogee of its insured, Carroll Chiasson, instituted this action against Dominic Lavergne and his employer, Percy L. Breaux, to recover damages resulting from a fire which allegedly was caused by the negligence of defendant Lavergne. Judgment on the merits was rendered by the trial court in favor of defendants, and plaintiff has appealed.
The principal question presented is: Was the fire which occurred in the Chias-son home on August 11, 1966, caused by the negligence of Dominic Lavergne? Another related issue which must be considered and resolved is whether the doctrine of res ipsa loquitur is applicable.
The evidence shows that the home of Carroll Chiasson, in Duson, Louisiana, was damaged by fire about 10:00 a.m. on August 11, 1966. At that time defendant Lavergne, a carpenter employed by Percy L. Breaux, was completing the construction of a snack bar in the kitchen of the home, and he was engaged in putting a formica top on that bar. The contact glue which was being used to stick the formica to the bar top was highly flammable, and this glue in some manner caught fire with the result that considerable fire damage was done to the rear portion of the house.
Lavergne and Mrs. Chiasson were in the kitchen when the fire started, but they gave conflicting accounts of what occurred at that time. Lavergne’s son also was present, but he did not testify at the trial. Several persons visited the house shortly after the fire occurred, and some of them testified as t'o what they observed on those visits. Among the witnesses who saw the house after the damage was done were two volunteer firemen who assisted in putting out the blaze, and two repairmen who assisted in repairing the damage a few days after the fire occurred. At least three reasonable, but different, accounts have been given as to the cause of the fire.
About three hours after the building caught fire Lavergne signed a written statement for the insurance adjuster which recites, in substance, that at that time he was holding a sheet of formica and a lighted electric light bulb on an extension cord, and that as he reached for another sheet of formica which his son, handed to him he dropped the light bulb on the counter and broke it. The statement then recites that the broken bulb caused some glue on the counter to ignite, that the fire spread to a can of glue which he had placed on a nearby table, and that Lavergne then picked up the burning can of glue and threw it out of the kitchen onto a breezeway which was located in the back of the house near the kitchen.
This account of the fire, as given in Lavergne’s written statement, is supported by the statements of other witnesses who testified to the effect that Lavergne was using an electric light on an extension cord at that time, and that the light bulb was found to be broken after the fire was extinguished. Also, a charred and burned can, of the type used to contain formica glue, was found on the breezeway of the house where the worst fire damage occurred, and at the place where Lavergne supposedly threw the burning can. The *481 fire was so intense at that point that it caused the concrete floor of the breezeway to blister and crack, indicating that some highly inflammable substance was on the floor of the breezeway at that time.
At the trial, however, Lavergne denied that he ever made any such statement to the insurance adjuster. He admitted his signature, but he is illiterate and he contends that the statement was not read back to him and that it does not recite what he told the adjuster. He testified that he had not spread any glue on top of the counter before the fire started, and that he was engaged in planing the counter top at that time. He stated that the can of glue on the nearby table had never been opened, that it did not catch fire, that he did not throw a can of any kind out of the house, and that the fire actually started at an air conditioning unit which was located in a window between the breezeway and a glassed-in porch located adjacent to the kitchen. He testified that Mrs. Chiasson had closed all of the windows and doors of the kitchen and had turned the air conditioner on just “seconds” before the air conditioner “blew up” or caught fire. He takes the position that the fire started from a spark or defect in the air conditioning unit.
The account of the accident given by Lavergne at the trial is supported by evidence establishing that the major portion of the fire occurred at the place where this air conditioner was located. The unit itself was burned beyond repair, and the window in which it had been installed, together with the wall and the ceiling in that immediate vicinity, were badly burned, all of which tends to show that the fire originated at that point. The fire damage in the kitchen where Lavergne was working was not nearly as bad as it was near the air conditioning unit. The counter top, where plaintiff contends the fire originated, was damaged very little, so little in fact that it did not need to he replaced. The carpenter who repaired the fire damage. testified that he merely wiped the counter top off and covered it with formi-ca, without even having to sand the top of the counter before doing so.
The third explanation of how the fire started was given by Mrs. Chiasson, who witnessed the entire incident while standing within four feet of the counter on which Lavergne was working. She testified that at that time Lavergne was spreading glue on the counter top with a roller and a flat pan, that the counter top was located very near her kitchen stove, that two pilot lights were burning in the stove at that time, and that the fire started suddenly “all over the counter.” She conceded that she could not determine where the fire came from, but she implied that it started from the pilot lights in the stove. She stated that before the fire started she had asked Lavergne if the pilot lights should be turned off, and that he had indicated that that was not necessary. She also testified that the fire did not occur until at least 30 minutes after she had turned on the air conditioning unit.
As we have already indicated, La-vergne’s version of the accident is considerably different from that given by Mrs. Chiasson. In addition to the part of his testimony which we have reviewed above, he also stated that he cut off the gas and removed the stove from the kitchen early that morning, before he began covering the counter with formica. He maintains strongly that the stove was not even in the kitchen when the fire started, and thus that the fire could not have originated from the pilot lights in that stove. His testimony to that effect is supported by that of Alton Breaux, one of the carpenters who repaired the fire damage, who stated that the. stove was not in the kitchen when he went to the house to make the repairs three or four days after the fire. Also, Mrs. Chiasson acknowledged that at the time of the fire there was a stove on a dolly in the breezeway of the house, and that the dolly and the stove were damaged *482 by the fire. In that connection Mrs. Chiasson stated:
“I don’t have one [a dolly], but there was a stove tied on to one out there. I believe it was still on there because he moved the stove with one. He had brought it at the end of the building way outside.”
* * >i< * * *
“I can’t remember if the stove was still on it [the dolly] or not, but I remember seeing something out there [on the breezeway] because the stove was all burnt up, that he had taken out of my kitchen.”
The trial judge concluded that the fire was not caused by the gas pilot lights in the stove or from a defect in the air conditioner. Instead, he found that the fire “was probably started” when Lavergne dropped and broke the lighted electric light bulb. He observed, however, that there was no evidence tending to show any special danger in using an electric light while laying formica, and he felt that Lavergne could not reasonably have anticipated that the dropping of a lighted light bulb could cause such an ignition. He concluded that plaintiff had failed to sustain its burden of proving negligence on the part of defendants.
We agree with the trial judge in his conclusion that the fire was not caused by the pilot lights in the kitchen stove, and that the most probable cause of the fire was the dropping and breaking of the electric light bulb. Since the fire seemed to have originated in the immediate vicinity of the air conditioning unit, however, we cannot rule out the possibility that it could have been caused by a spark or defect in that unit, although we concede that such an explanation is less probable than the one found by the trial court. After considering all of the facts, we conclude that the evidence preponderates to the effect that the fire was caused by the dropping and breaking of the lighted electric light bulb.
As noted by the trial judge, there is nothing in this record tending to show that it was dangerous to use electric lights around formica glue, or that that type of glue could or would ignite from a broken bulb. We think, as did the trial court, that this was a “freakish” accident, and one which could not reasonably have been anticipated by Lavergne. We agree with the trial court, therefore, that Lavergne was not negligent in using the electric light bulb or in allowing the bulb to fall and to break.
Plaintiff argues, however, that the doctrine of res ipsa loquitur is applicable, and that the burden of proof has been shifted to defendants to prove that they were without fault. We find no merit to that argument for two reasons.
In the first place, there were eyewitnesses to the accident which gave rise to this suit, and all of the facts and circumstances appear in evidence. The cause of the accident thus is known and has been determined. In Day v. National United States Radiator Corporation, 241 La. 288, 128 So.2d 660 (1961), our Supreme Court quoted with approval the following rule from 38 Am.Jur. 999, Sec. 303, Negligence:
“The doctrine of res ipsa loquitur has no application where all the facts and circumstances appear in evidence. Nothing is then left to inference and the necessity for the doctrine does not exist. Being a rule of necessity, it must be invoked only where evidence is absent and not readily available. It is not to be invoked when the evidence is available, and certainly not when it is actually presented. Nor has it any application where the cause of the accident is known and is not in question.”
Secondly, even if we assume that the cause of the fire has not been established by direct evidence, the doctrine of res ipsa loquitur is not applicable because it can reasonably be concluded that the *483 damage resulted from some other causes not involving negligence on the part of defendant.
The applicable rule was stated by our Supreme Court in Morales v. Employers’ Liability Assur. Corporation, 202 La. 755, 12 So.2d 804 (1943), as follows:
“It is the duty of the plaintiff to prove negligence affirmatively; and, while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it can not he invoked.” (Emphasis added.)
And, in Hanchey v. Central Louisiana Electric Company, 218 So.2d 399 (La.App. 3d Cir. 1969), we said:
The doctrine of res ipsa loquitur may be invoked only where the evidence warrants an inference that it was the defendant’s negligence, rather than the acts of others for which defendant is not responsible, that caused the accident. It may not he invoked where, from the nature of the facts established by the record, it could reasonably be concluded that the accident was caused by the negligence of another or through the instrumentality or agency of another. Pilie v. National Food Stores of Louisiana, supra [245 La. 276, 158 So.2d 162]; Talbert v. Tyler, supra [121 So.2d 854]; James v. Childs, Division of Kroger Company, 166 So.2d 77 (La.App. 3d Cir. 1964); Larkin v. State Farm Mutual Automobile Insurance Company, 233 La. 544, 97 So.2d 389 (1957); Morales v. Employers’ Liability Assurance Corp., 202 La. 755, 12 So.2d 804 (1943). (Emphasis added.)
Some of the many other cases in which that rule has been applied are: Tarbox v. Eason, 179 So.2d 916 (La.App. 2d Cir. 1965); Evans v. Travelers Insurance Company, 212 So.2d 506 (La.App. 1st Cir. 1968); Schulingkamp v. Bolton Ford, Inc., 163 So.2d 161 (La.App. 4th Cir. 1964); West v. Hydro-Test, Inc., 196 So.2d 598 (La.App. 1st Cir. 1967); James v. Childs, Division of Kroger Company, 166 So.2d 77 (La.App. 3d Cir. 1964); Talbert v. Tyler, 121 So.2d 854 (La.App. 2d Cir. 1960).
In the instant suit, even assuming that the fire might have been caused by the burning pilot lights in the kitchen stove, the doctrine of res ipsa loquitur is not applicable because it also reasonably could have resulted from the broken light bulb or from a spark or defect in the air conditioning unit, neither of which last mentioned causes involved negligence on the part of defendant.
Finally, plaintiff contends that the unexplained failure of defendant Lavergne to produce the testimony of his son, who was an eye witness to the beginning of the fire, creates a presumption that the son’s testimony would be against the interests of that defendant. We agree that such a presumption arises in this instance, but we have concluded that the presumption is not sufficient to offset the proof which has been produced. In arriving at that conclusion, we have assumed that the son’s testimony would be substantially in accordance with that of plaintiff’s witnesses, and that it wottld be contrary to Lavergne’s own testimony.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.