268 So.2d 110 (1972)
HAYMARK AND SONS, INC., Plaintiff-Appellant,
v.
Edward J. PRENDERGAST, Defendant-Appellee.
No. 3986.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1972.
*111 Baggett, Hawsey, McClain & Williams by L. E. Hawsey, Jr., Lake Charles, for plaintiff-appellant.
Philip J. Shaheen, Jr., Lake Charles, for defendant-appellee.
Before FRUGE, CULPEPPER and DOMENGEAUX, JJ.
FRUGE, Judge.
This suit arises from property damages caused by a boat fire. On June 5, 1971, Edward Prendergast was operating a 20-foot Well Craft fiber glass boat equipped with a 165 Mercury Cruise engine while on Lake Charles to cover Contraband Days for KAOK Radio. He was accompanied by an employee of KAOK, his children, and a friend of his daughter, with whom he was using this as an opportunity to ski and enjoy pleasure boating. The activities Prendergast engaged in that day required frequent stopping and starting of the boat. In each instance, the motor had started perfectly. After operating the boat for approximately *112 three or four hours, he went to Haymark Terminal for the purpose of refueling. He filled the tank himself, being careful to turn the nozzle up after refueling to avoid gas spillage. Plaintiff Haymark, who witnessed the refueling operation, testified that no gas was spilled into the boat during this process. The engine on this boat was an inboard-outboard which had an ignition system engaged by a key set next to the steering column. When starting the motor, the driver had to be forward by the steering wheel facing away from the engine which is in the stern of the boat.
Before attempting to start the engine, Prendergast shoved the boat approximately 20 feet into the slip and made a visual check of the inside of the boat. He then attempted to start the engine but had some difficulty. Before the second attempt to start the motor, he choked it by pushing the throttle forward as he had been instructed to do by the company that sold him the boat. He then choked the motor two or three times and engaged the ignition again. After this third attempt, there was a muffled pop and a sudden gasoline fire occurring in the enclosed bilge of the boat. The fire, fed by gasoline from the full tanks and the fiber glass hull, spread so rapidly that everyone on the boat had to jump overboard to save their lives. There were two fire extinguishers on board, but because the fire was burning so hotly and rapidly, there was no chance for Mr. Prendergast to attempt to put out the fire. Plaintiff Haymark testified that it would have been impossible to get close enough to extinguish the fire with the fire extinguishers because of the intense heat. The boat drifted 20 feet into Mr. Haymark's dock, causing some fire damage to the wharf.
A well qualified expert was called by each side. Mr. Wagster, plaintiff's expert, testified that he could not say whether there was gas in the bilge or not, but that in his opinion this was the only explanation for the fire. Both experts stated that they could only speculate as to why there might have been gas in the bilge. Wagster testified that there were many possible causes of gasoline in the bilge area: the hose leading to the gas tank could have ruptured during refueling, there could have been a broken fuel line to the motor, or vibrations during previous operation of the motor could have loosened a fuel line connection. The possibility of an electrical fire near the gas tank was also raised.
Mr. Pettefer, defendant's expert, testified that the carburetor had a flame arrestor, the alternator was shielded, and the starter was totally enclosed in compliance with the Coast Guard regulations designed to prevent fires. He stated that Prendergast had brought the motor in for a maintenance check approximately three weeks before the fire and that it was in good operating condition. The blowers which ventilated the hatch area were on at the time the fire started. These blowers would have removed any gas fumes, but would not have removed any accumulation of liquid gasoline in the bilge. They operated in such a way that if there were gas in the bilge, persons in the boat could not smell it. The gas tank caps were set below the top of the hull on the outside, so that any gas leaked while refueling would overflow into the water and not into the boat.
Although Wagster stated that it would take a large amount of gasoline in the bilge to cause a fire such as the instant one, Pettefer testified that, because the engine and bilge area constituted a small enclosure, a teaspoon of gas would be enough to start a fire like the one in question. We accept Mr. Pettefer's explanation. Both experts discounted the possibility that a flooded carburetor had caused enough gas spillage to cause this fire. Had there been a large amount of gas in the bilge area for some time, the heat caused by four hours of nearly continuous operation of the motor would more than likely have generated enough fumes to cause ignition upon the first or second attempt to engage the starter. It is more probable that when *113 the motor was being choked before the third starting attempt, a broken fuel line or loose connection leaked enough gas to start a fire which was then fed by gasoline from the two full 18-gallon tanks in the rear sides of the boat.
Although the record is bare of any evidence of an affirmative act of negligence by Prendergast in the maintenance or operation of his boat, the plaintiff contends that his failure to raise the hatch over the bilge area and check for gasoline before starting the motor was negligence which caused the fire and resulting property damage to the wharf.
Negligence is the failure to exercise ordinary reasonable, or due care which under the same or similar circumstances would ordinarily be exercised by, or might reasonably be expected from an ordinarily prudent person. Tucker v. Travelers Insurance Company, 160 So.2d 440 (La.App. 2nd Cir., 1964). A party alleging negligence must prove it by a fair preponderance of the evidence. Mere speculation, suspicion or probability does not constitute a proper basis to sustain an award of damages. Where the plaintiff seeks to prove a defendant's negligence through the use of circumstantial evidence, he must exclude with a fair amount of certainty all reasonable hypothesis other than that urged. Hargis v. Travelers Indemnity Company, 248 So.2d 613 (La.App.3rd Cir., 1971); Romero v. Butcher Air Conditioning Company, 255 So.2d 132 (La.App.3rd Cir., 1971).
There is no doubt that Prendergast had maintained and operated the boat in a safe manner up until the time of the fire. Plaintiff Haymark would have this court rule that Prendergast's failure to lift the hatch and inspect the bilge was negligence even though there is nothing in the record to show it is dangerous not to do so immediately before each attempt to start the engine. Moreover, plaintiff has not placed in the record one rule of boating which requires the operator of a pleasure boat to inspect the bilge before each attempt to start the engine. He has failed to show that had Prendergast inspected the bilge before choking and attempting to start the motor, he would have discovered gasoline. Prendergast had no duty to inspect the bilge before each separate attempt to engage the starter. Haymark has failed to establish that an ordinarily prudent person would, or reasonably could be expected to, have done so under similar circumstances.
Haymark also argues that the trial court erred in not applying the doctrine of res ipsa loquitur. In order for this doctrine to be applied, three requirements must be met: (1) "the accident which damaged plaintiff was caused by an agency or instrumentality within the actual or constructive control of the defendant"; (2) "the accident is of a kind which ordinarily does not occur in the absence of negligence"; and (3) "the evidence as to the true explanation of the accident is more readily accessible to the defendant than to the plaintiff". Northwestern Mutual Fire Association v. Allain, 226 La. 788, 77 So.2d 395, 397 (1954). As in all negligence cases, the plaintiff must prove a causal connection between the accident or event and his damages. Bougon v. Traders & General Insurance Company, 146 So.2d 535 (La.App.3rd Cir., 1962), as well as proving he is free of contributory negligence. Hanchey v. Central Louisiana Electric Company, 218 So.2d 399 (La.App. 3rd Cir., 1969). The doctrine is likewise not applicable when it can reasonably be inferred that the plaintiff's damages resulted from some other cause not involving negligence on the part of the defendant. Connecticut Fire Insurance Co. v. Lavergne, 224 So.2d 479 (La.App.3rd Cir., 1969).
In Morales v. Employers' Liability Assur. Corporation, 202 La. 755, 12 So. 2d 804 (1943), our Supreme Court stated:
"It is the duty of the plaintiff to prove negligence affirmatively; and, while the *114 inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it can not be invoked." (p. 808).
The doctrine of res ipsa loquitur "may not be invoked where, from the facts presented, it could reasonably be concluded that the damage was caused by the fault of another, or that it resulted from circumstances not involving negligence on the part of the defendant. (Citations omitted)." Romero v. Butcher Air Conditioning Company, 255 So.2d 132, 135 (La.App. 3rd Cir., 1971). The evidence here does not warrant an inference that the plaintiff's damages were caused by any negligence on the part of Prendergast. Both experts inferred the presence of gas in the bilge from the nature of the fire, but stated that they could only speculate as to how gas could have gotten in the bilge. Plaintiff Haymark has shown only that a fire of unknown causes originated in defendant Prendergast's boat in full view of numerous witnesses. A defendant's inability to explain all the details of an accident, standing alone, does not justify an inference of negligence. See Hargis v. Travelers Indemnity Company, supra, and Romero v. Butcher Air Conditioning Co., supra. However, this decision need not rest upon a finding that it may reasonably be concluded that Haymark's damages resulted from circumstances not involving negligence on the part of the defendant. We agree with the trial court's finding that the defendant has exonerated himself of negligence.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.