ROGERS, Justice.
 

 Mrs. Mary C. Morales sued to recover damages for personal injuries suffered near the Town of Independence in the Parish of Tangipahoa, when she fell from an ambulance while accompanying her sick daughter from the state hospital at Independence to a hospital in the City of New Orleans. The ambulance was the property of the State of Louisiana, or the Department of Public Welfare, and was used for transporting charity patients treated at the state hospital at Independence. At the time the accident occurred, the ambulance was driven by an employee of the hospital whose duty it was to transport patients to and from the institution.
 

 The suit was brought against the State of Louisiana, the State Department of Public Welfare, the State Board of the Department of Public Welfare, the driver of the ambulance, and the Employers’ Liability Assurance Corporation, Ltd., the carrier of public liability insurance on the ambulance.
 

 Exceptions filed by the State and its departments were sustained and those defendants were dismissed as parties to the suit. Exceptions filed by the insurance company and the driver of the ambulance were overruled and those defendants then filed a joint answer. After trial on the merits, the district court rendered judgment in favor of the two remaining defendants dismissing plaintiff’s suit. The judgment was affirmed by the Court of Appeal, and the case has been brought to this Court on a writ of review.
 

 The record discloses that plaintiff’s daughter, Mrs. Camelo Lamonte, was brought, in a serious condition, to the hospital at Independence about two o’clock in the morning of March 10, 1940, and that the physicians in charge deemed it advisable to send Mrs. Lamonte to New Orleans at once. About four o’clock that morning Mrs. Lamonte was placed in the hospital ambulance on a cot or stretcher provided for that purpose. At their request Mrs. Mary C. Morales, the mother, Sam Lamonte, the husband, and Pete Morales, the brother of Mrs. Lamonte, over the protest of the driver, were permitted by the surgeon in charge to enter the ambulance. The driver of the ambulance closed the door of the vehicle after the relatives of Mrs. Lamonte had seated themselves therein.
 

 To the right of the stretcher on which the patient lay there were two folding seats on the inside of the ambulance. The plaintiff, Mrs. Morales, and Sam Lamonte, her son-in-law, sat on the front seat near the patient. Mrs. Morales sat on the outside, or the side against the right frame of the ambulance and just to the rear of
 
 *762
 
 the door out of which she fell. Pete Morales, the brother of Mrs. Lamonte, sat on the rear seat.
 

 After setting forth the above facts and charging various acts of negligence to the driver, plaintiff alleged that when the ambulance had reached a point near Natalbany, the door located near the right front section of the ambulance the existence of which was unknown to plaintiff, opened without any fault on her part, and she was violently thrown out of the ambulance on to the pavement where she sustained the injuries set forth in the petition.
 

 The ambulance was equipped with three doors. One of the doors was at the rear, through which patients were placed in the vehicle. The other doors were similar to the usual doors of a passenger automobile. One of these doors was on each side of the ambulance and was used by passengers entering the vehicle.
 

 Plaintiff utterly failed to prove the acts of negligence of which she alleges defendants were guilty. On the contrary, the record conclusively shows that plaintiff and the other two relatives of Mrs. Lamonte were not invited by the driver to ride in the ambulance; that, at their own request, they were permitted to do so by the surgeon in charge of the hospital. There was nothing wrong with the lock on the door of the ambulance and all its parts were in good mechanical condition. The driver of the ambulance closed the rear door of the ambulance after Mrs. Lamonte was placed therein. He also closed the side door through which the passengers enter. Both doors were securely closed. The speed of the ambulance was not excessive, and it was not driven in such a way as to cause it to swerve or jerk and the door to fly open. The road was smooth and straight and there was nothing in the speed or manner of driving to indicate that the driver was not exercising ordinary and reasonable care.
 

 There is no merit in plaintiff’s contention that the driver was guilty of negligence in failing to provide suitable seating arrangements for the three passengers who, in addition to the patient, rode in the ambulance. No seating arrangements were possible except those which were provided. The plaintiff, Mrs. Morales, her son, and her son-in-law requested and obtained permission to ride in the rear portion of the ambulance. They could not reasonably expect the driver to construct a third seat in the vehicle. The two seats on which they sat were in plain view, and they chose to enter the rear portion of the ambulance and occupy them. They had a better opportunity than the driver of adjusting themselves to the seats.
 

 The Court of Appeal correctly found that plaintiff was a gratuitous guest to whom the driver owed only the duty to exercise the ordinary care of a reasonably prudent man in the management and operation of a motor vehicle. This is the rule prevailing in this state and elsewhere. Lorance v. Smith, 173 La. 883, 131 So. 871.
 

 In their brief, counsel for plaintiff say they have no quarrel with the rule so far as its applies to passengers of
 
 *764
 
 vehicles generally, but they, argue that the rule is not applicable where the vehicle is an ambulance owned and operated by the State for the benefit of its citizens. But there is no distinction made under the law between a person wlm requests and obtains the privilege of riding as a gratuitous passenger in an ambulance, state-owned or otherwise, and a passenger who requests and obtains the privilege of riding as a gratuitous passenger in any other kind of motor vehicle. In either case, the person is a gratuitous passenger or guest to whom the driver of the motor vehicle owes the same duty.
 

 Counsel for plaintiff say that deeming it to be of no importance, both the trial judge and the Court of Appeal failed to pass on the question as to which door of the ambulance plaintiff and her co-passengers entered the vehicle prior to the beginning of the trip. Counsel for plaintiff further say that the question must be determined in order to arrive at a proper decision in the case.
 

 Plaintiff, her son, and her son-in-law testified that after the patient was placed in the ambulance through the rear door, they entered the vehicle through the same door. On the other hand, the driver of the ambulance testified that after the patient was placed in the ambulance, plaintiff and ihe other passengers entered the vehicle through the right side door. He further testified that after the passengers had gotten into the ambulance through the side door, he closed this door as well as the rear door. Plaintiff and her fellow passengers claimed that they did not know of the existence of the side door which later opened.
 

 It is the serious contention of plaintiff’s counsel that the unsupported testimony of the driver of the ambulance can not be accepted as a true statement of the facts in view of the statements made by plaintiff, her son, and her son-in-law, and of the reasonableness of their version of what happened. Counsel for plaintiff submits that this question of fact is important for the reason that if the side door was not made use of to admit the passengers, no one could know what the condition of the lock was at that particular 'time; if, on the other hand, the side door was made use of by the passengers, the defendant should be in a position to explain why the door opened while the ambulance was proceeding rapidly along a straight road.
 

 Where witnesses differ, their testimony must be considered in the light of their interest in the cause, and of its probability and consistency with surrounding circumstances. Mere superiority in the number of witnesses is not controlling. It can not be successfully urged that plaintiff, her son, and her son-in-law were not interested in a favorable outcome for plaintiff in this litigation. 'This being so, their combined testimony is of no greater probative value than the unsupported testimony of the driver of the ambulance. The surrounding circumstances support the version of the driver.
 

 The customary method used by passengers in entering the ambulance was through the side door and not through the
 
 *766
 
 rear door which was used for placing patients in the ambulance. Passengers were required to step up only a few inches in order to enter the ambulance from the pavement through the side door.
 

 At plaintiff’s instance, the ambulance itself was brought to the courthouse at Amite when the case was tried, and it was inspected by the trial judge. Several witnesses testified at the place where the ambulance was parked and certain demonstrations were made there. In one of the demonstrations plaintiff, her son, and her son-in-law were asked to enter the ambulance in the same way in which they claim they entered it at the time the accident occurred. In compliance with the request, the parties were able to get into the ambulance with great difficulty. They were compelled to climb over the seats in order to get into the seats through the rear door. There was no patient in the ambulance when this demonstration was made as there was when the accident occurred, which would have made it even more difficult for the passengers to enter through the rear door. Dominick Bravata, a son-in-law of Mrs. Morales, testified that he was present at the hospital in Independence at the time Mrs. Lamonte was placed in the ambulance. On direct examination, he was asked the following question: “What took place after the patient was placed in the ambulance?” to which he gave the following answer: “They put my mother-in-law in there, Mr. Lamonte and then Pete got in there and closed the back door. I didn’t see how they sat. Next I know the ambulance had pulled off.” Although the witness first testified that Pete, plaintiff’s son, closed the back door, láter, on cross-examination, he testified that the driver of the ambulance closed the door, which was in line with the testimony given by the other witnesses.
 

 Plaintiff’s charge that the doors of thé ambulance were not securely closed and fastened is not supported by the evidence. The driver of the ambulance testified that he saw that all the doors were securely closed before he left the hospital. Plis testimony is not refuted and is supported by the circumstances. If the side door had been only partly closed, it would have rattled and attracted the attention of the passengers, which was not the case. Moreover, in order to reach the highway, the driver of the ambulance was compelled to make a number of turns. The ambulance not only negotiated those turns satisfactorily, but had proceeded several miles on the highway before the door, through which plaintiff fell out, swung open.
 

 Counsel for plaintiff urges that the doctrine of res ipsa loquitur is applicable to this case and that in the absence of evidence by defendants showing how the accident occurred, or, at least, that they were without fault, there results from the accident itself a presumption of negligence which defendants must overcome if they are to defeat plaintiff’s claim.
 

 It is fundamental that negligence is never presumed from the happening of an accident, but the happening of an accident with its attendant circumstances may justify the inference of negligence.
 
 *768
 
 Jones v. Shell Petroleum Corporation, 185 La. 1067, 171 So. 447.
 

 To render the doctrine applicable in an automobile accident, the accident must be one which ordinarily could not happen except through defects in the car or fault in its operation, or both. But the doctrine applies only where the circumstances leave no room for a different presumption, and it must appear that the probable cause was within the control of the operator of the automobile against whom the doctrine is sought to be invoked. 5 Am.Jur., Automobiles, § 607, p. 839.
 

 The plaintiff’s case is predicated on the proposition that the door of the ambulance, or its lock, was defective, and that the door swung open because of these defects, or because of the negligent operation of the car.
 

 The facts are that the accident happened at a place where the road was smooth and straight and while the ambulance was being driven at a speed which was not excessive. There was nothing wrong with the door of the ambulance or its lock, and the ambulance was not driven in such a way as to cause the door to swing open. The door could not open except by some person turning its handle either on the inside or on the outside.
 

 According to the regulations of the hospital, the driver of the ambulance was the only occupant of the driver’s seat. The seat was separated from the rear portion of the ambulance by a sliding glass panel or panels. The first the driver knew of the accident was when he heard one of the occupants of the rear portion of the ambulance exclaim, “Mamma dead,” “Mamma dead.” He immediately brought the ambulance to a stop, turned the ambulance around, and drove back to where plaintiff was lying on the roadway after her fall from the ambulance.
 

 The factual situation which we have hereinabove set forth is such as to render the doctrine of res ipsa loquitur inapplicable in this case. It is true that plaintiff, her son, and her son-in-law steadfastly maintained that neither plaintiff nor any one else moved at all, or touched the door handle, but none of them knew how the accident actually happened. At one portion of his testimony, Pete Morales, plaintiff’s son, admitted that he did not know whether his mother opened the door or not. It is difficult to understand how it was possible for the occupants of the ambulance to sit “squeezed together” without any movement being made by any of them. Plaintiff and her son-in-law occupied the front seat, plaintiff being nearest the driver and next to the door through which she fell. It is not at all beyond the realm of possibility that the accident might have been caused by plaintiff inadvertently pressing down upon the handle of the door, since this was the only way in which the door could have been opened.
 

 -It is not an unusual occurrence for an occupant of an automobile to inadvertently lean against the door, or to depress its handle in such a way as to cause the door to fly open, and in many cases
 
 *770
 
 causing the occupant to fall out of the car.
 

 It is the duty of the plaintiff to prove negligence affirmatively; and, while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it can not be invoked. Quass v. Milwaukee Gas Light Co., 168 Wis. 575, 170 N.W. 942; Klein v. Beeten, 169 Wis. 385, 172 N.W. 736, 5 A.L.R. 1237.
 

 Moreover, the portion of the ambulance occupied by plaintiff and her two near relatives was in their exclusive control and not in the control of the driver of the ambulance. They were in a better position than the driver to adjust themselves to the seats provided and the conditions under which they chose to ride. The driver, while in the cab, was not in a position to discharge his duties and at the same time to take care of the occupants of the rear portion of the ambulance, who were fully able to take care of themselves. Therefore, the possible or probable causes of the accident were not so within the control of the driver of the ambulance as to bring the rule of res ipsa loquitur into operation.
 

 For the reasons assigned, the judgment of the Court of Appeal is affirmed.
 

 ODOM, J., takes no part.