DORÉ, Judge.
This is a suit on behalf of Kean’s, a Partnership engaged in the laundry business in Baton Rouge, against the Falstaff Distributing 'Co., its liability insurer, National Surety Corp., and David H. Mon-crief, the driver of the Falstaff truck, for damages sustained by a truck belonging to Kean’s as a result of being run into by a truck belonging . to Falstaff Distributing Company. The collision occurred on the Jefferson Highway at about 3:00 in the afternoon, on a clear day, at a point where the highway, a blacktop road, about 20 feet in width with gravel shoulders, is straight for some considerable distance. The two trucks were proceeding toward Baton Rouge with the laundry truck ahead and the beer truck following approximately 200 feet to the rear, to the knowledge of the laundry truck driver, both traveling at about 35 miles per hour. It was alleged in the petition that shortly prior to the accident, that the laundry truck was making a. right turn off of the highway into Park-view Church Drive; that said right turn was being properly and lawfully made and that the beer truck was driven into -the rear of said laundry truck causing it to overturn and collide with a tree and causing the complete wreckage of Said laundry truck, which was valued at $1997.67, which less the salvage value thereof of $150 makes a total damage claim of $1847.67. The plaintiff alleges that the doctrine of res ipsa loquitur is applicable to its claim against defendants and that under said doctrine the burden of. proving freedom from liability is placed upon the defendant. *428 In the alternative, the plaintiff pleads that in the event the doctrine of res ipsa loqui-tur is held not to apply, then the court should hold that the accident was caused solely by the negligence of the driver of the beer truck while acting in the course and scope of his employment, particularly, but not exclusively in the following respects: (a) In not keeping a proper lookout for other vehicular traffic lawfully and properly being operated ahead of him; in failing to keep his truck under proper control; in failing to apply his brakes and to slacken the speed of the truck after he saw or should have seen plaintiff’s truck ahead of him; in driving at an excessive speed under the circumstances; in crashing into the rear of plaintiff’s truck while plaintiff’s truck was properly and lawfully being operated; in failing to swerve or •turn his truck, or to slacken its speed, all of which he had ample time and place and space to have done, to avoid crashing into the rear part of plaintiff’s truck, and in negligently, carelessly and recklessly driving the said truck.
The defendants filed a joint answer wherein they admit the occurrence of the collision but deny all the other material allegations of the petition, and, in the alternative, they plead that the truck driver of plaintiff’s truck was contributorily negligent, which negligence is imputable to plaintiff, particularly but not exclusively in the following manner: In failing to keep a proper lookout; in failing to 'keep his vehicle under proper control; in failing to indicate his intentions to make a right turn by use of proper arm signal or otherwise, in violation of the rules of the road; in pulling over into the left lane of traffic before starting to make his right turn, thereby receiving and confusing the driver of defendant’s truck.
In the further alternative, the defendants aver that if they should be found responsible for any damages claimed by plaintiff, then and in that event, they show and allege that the amount claimed is excessive and unwarranted.
Sometime after the filing of their answer, the defendants filed exceptions of no cause and no right of action. There is no showing in the record as to what disposition was made of these exceptions, but apparently they were referred to the merits, and abandoned in this court.
After trial on the merits, the Distriot Court, for written reasons assigned, rendered judgment in favor of the defendants and against the plaintiff, rejecting the plaintiff’s demands at his costs. The plaintiff has appealed.
On the question of liability, the first question to consider is whether or not the doctrine of res ipsa loquitur is applicable herein. In that connection the plaintiff cites the case of Loprestie v. Roy Motors, Inc., 191 La. 239, 185 So. 11, and other authorities involving rear-end collisions. In the case at bar it does not appear from the evidence, as found by the trial judge, that the accident consisted of a rear-end collision. He says: “The evidence shows that the collision occurred about mid-afternoon on May 23, 1950. The two trucks were proceeding toward Baton Rouge on the old Jefferson Highway several miles Southeast of the City, and just prior to the collision the beer truck, to the knowledge of the driver of the laundry truck, had been following the laundry truck for approximately two miles and approximately two hundred feet to the rear, both traveling about thirty-five miles per hour. The weather was clear and the road dry. The highway is approximately twenty feet wide. About two-thirds of the way on a one-half mile straight stretch of the highway a gravel road leads off from the highway at approximately a right angle and to the right of the trucks. This is a “T” intersection, that is, there is no road leading off from the highway on the other side, or to the left of the trucks. While the laundry truck was turning 1 into this gravel road it was struck by the beer truck, the front bumper of the beer truck coming in contact with the right side of the laundry truck a short distance in front of the rear end. * * * ”
The trial judge therefore found that the cases cited by plaintiff are not in line with the facts in the instant case and reached the conclusion that the doctrine of res ipsa loquitur was not applicable and in effect *429 that this case does not involve a sudden stop on the highway, but rather a sudden right turn executed in an illegal manner.
As brought out by the defendants in their brief, the doctrine of res ipsa lo-quitur is not applicable when the accident could have happened as a result of one of two causes, citing the case of Morales v. Employers’ Liability Assurance Corp., 202 La. 755, 12 So.2d 804, 808, wherein the Supreme Court said: “(12-14) It is the duty of the plaintiff to prove negligence affirmatively; and, while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it can not be invoked. Quass v. Milwaukee Gas Light Co., 168 Wis. 575, 170 N.W. 942; Klein v. Beeten, 169 Wis. 385, 172 N.W. 736, 5 A.L.R. 1237.”
We agree with the trial judge that the doctrine does not apply herein and the only question before us in so far as liability is concerned is whether or not plaintiff has proved that the accident was caused by the sole negligence of the driver of the beer truck. The only eye witnesses to the accident who testified were the driver of the beer truck and the driver of the laundry truck.
Mr. Bonner, the driver of the laundry truck, testified that he had to make a delivery and a pickup at the Parkview Baptist Church and that to do so he had to make a right turn from the highway unto the Church driveway located on the south side of the highway. It may be noted that there is no driveway or street opposite this Church driveway and that therefore no left turn could be expected. He testified further that he knew that he was being followed from the rear by the beer truck; that prior to making his right turn he was driving at approximately 35 miles per hour and that preparatory to making a right turn he slowed down to about 20 miles per hour and while traveling at that speed at a distance of about 30 feet from the intersection he gave a signal by placing his hand outside his laundry truck and indicating with his fingers over the top thereof that he intended to make the right turn.
He testifies further as follows:
“Q. How did you intend to make that turn; did you keep in your right hand lane of traffic and turn sharp to the right, or did you swing your truck to the left and into the left hand traffic lane in order to make a wide turn into the road? A. I never make a wide turn. I might have gotten over to the line because I got over as far as I can—
“Q. But you are sure you did not go further to your left in making that turn than the center line of the highway? A. That’s right.
“Q. Would that have put any part of your truck on the left hand side of the road? A. No.
“Q. When you say you might have gone to the line, you mean the body of the truck that extends over the panels would have been not further to your left than the center line of the Jefferson Highway? A. I wouldn’t know about the back end— it might have been over three or four inches. I am not an expert on that part of driving.
“Q. I believe you said you did not know the position of the Falstaff truck when you started to make the right turn? A. No, sir, I did not. I did know he was back there.”
The driver of the beer truck, Mr. Mon-crief, admits that he had been following the laundry truck for some two miles at a distance of about 200 feet and he explains the accident as follows:
“A. We were both going in the same direction and he came to this little road that turned into a church there on this highway, and he pulled out across the center line and slowed down to about two miles per hour, and made a right turn from the left side. When he pulled out he was-slowing down a little and I slowed down and he suddenly come to almost a complete-stop out in the center of the road, and I pulled off on the right shoulder and -applied my brakes trying to stop and he pulled to the right right in front of me.
*430 “Q. What part of your truck struck the Kean’s truck? A. My b.umper' hit the right rear corner of his truck.
“Q. Approximately how fast were you traveling at the time? A. Just barely moving because it hit and stopped.
“Q. Well how far did your truck travel after the collision? A. No distance.”
The physical facts show that the collision occurred as related by Moncrief. The only possible negligence that we can see is that he admits that he was following the laundry truck at a distance of about 75 feet when the driver of the laundry truck performed the unusual maneuver of slowing down and cutting his car towards the left of the center line and further admits that he could have stopped his beer truck at that time within 50 'feet, but rather chose to slow down and to cut to the right shoulder (five feet wide). The trial judge concluded, however, from the evidence, that Moncrief acted reasonably in the emergency which confronted him and which was caused by the unusual maneuver of the laundry truck. He states:
“Moncrief’s testimony as to his actions when he was confronted with the emergency is uncontradicted and reasonable. Considering the physical facts along with his testimony convinces the Court that there would have been no collision if the laundry truck had come to a complete stop on the pavement up against the center line. The right shoulder utilized by Moncrief has a width of about five 'feet available for traffic in an emergency. To the right of the laundry truck a few feet of pavement was open, and the ‘skirts’ or ‘wings’ of the gravel road being at least forty feet wide at its intersection with the pavement gave additional space for the beer truck to utilize in avoiding a collision. Either deliber-' ately or instinctively, Moncrief undertook to follow this route, applying his brakes as much as was possible considering his precarious position on the shoulder. It is highly probable that this maneuver would have succeeded except for the fact that the laundry truck turned squarely to the right and began to enter the gravel road-. Then Moncrief swerved to the right as far as possible but yet too little to avoid the collision.
“Adverting again to the gravel road, the writer of this opinion knows from personal observation that this road extends only approximately one-half mile from the highway and comes to a dead end. It serves a country church, the minister’s home and six other small residences at the present time. It is possible that it .served less at the date of the collision, more than nine months ago. Perhaps more than ninety per cent of its use is by persons attending services at the church. The writer has passed this intersection many times and has no recollection of ever having seen a vehicle turn into it, and although Moncrief testified that he was well acquainted with the highway at this point, unless he had passed there at or near the hour appointed for church services his experience had probably been the same. It is not a ‘road’ in the strict sense, that is, not in the same sense, for example, a's the Essen Lane Road, which leads off in a southerly direction nearer in to the City of Baton Rouge. It is not reasonable to charge the driver of a vehicle with the same notice of the possibility of vehicles entering into or coming out of this intersection as would be charged to him at the Essen Lane intersection, which is heavily traveled.”
The trial judge finally concluded as follows: “From all the facts and circumstances surrounding this case the Court has reached the conclusion that what actually happened was that Mr. Bonner reached a point at or very near the gravel road before he remembered that he was supposed to turn into it; that he reduced his speed suddenly; that he gave an inadequate right turn signal, or none at all; that in his confusion and uncertainty he came to almost a complete stop very near the center of the highway, paused there momentarily, turned squarely to the right and entered the gravel road. No other reasonable conclusion suggests itself.”
 It is our opinion that there is no manifest error in the conclusion of fact of the trial judge. In any event, from the evidence we are convinced 'that the driver of *431 the laundry truck was guilty at least of contributory negligence in failing to give any indication of his intended right turn, by his own admission, until he was only 30 feet from the driveway, and he only gave that indication for approximately fifty feet, when he well knew that he was being followed by the beer truck. Furthermore 'he was negligent by his unusual maneuver just prior to making his right turn.
Finding no manifest error in the conclusions of fact of the trial court, the judgment appealed from is affirmed.