404 So.2d 1337 (1981)
Nathaniel ZENO, Sr., et al, Plaintiff-Appellants,
v.
LINCOLN GENERAL HOSPITAL, et al, Defendants-Appellees.
No. 14648.
Court of Appeal of Louisiana, Second District.
September 29, 1981.
*1338 Paul Henry Kidd, Monroe, for plaintiffs-appellants.
Shadoin & Bleich by Joe Bleich, Ruston, Theus, Grisham, Davis & Leigh by R. L. Davis, Jr., Monroe, for defendants-appellees.
Before HALL, MARVIN and JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
Nathaniel Zeno, Sr. and his wife, Ruthel D. Zeno, plaintiffs in this malpractice action against Dr. Lamoyne C. Bleich and Lincoln General Hospital, appeal a judgment rejecting their demands for damages allegedly sustained because Dr. Bleich was guilty of negligence when he performed an operation upon Mrs. Zeno's rectum. We affirm.
The medical records of Mrs. Zeno at Green Clinic in Ruston, Louisiana, which are in evidence, reflect that she was having problems in the rectal area as early as 1960, and that she had been seen with rectal complaints by doctors on the staff of the clinic, other than Dr. Bleich, on May 21, 1968, April 7, 1969, September 15, 1969, and September 19, 1969.
She was advised by Dr. Lumpkin, who saw her on September 19, 1969, and by Dr. Hall, who saw her on September 22, 1969, that she needed surgery to correct her rectal problems. She first saw Dr. Bleich, who was a member of the staff of Green Clinic, on October 29, 1969 complaining of pain and *1339 drainage from the rectum. She stated that the drainage had commenced approximately one year earlier following the lancing of a boil on her right buttock by Dr. Robinson in Jonesboro, Louisiana.
Dr. Bleich diagnosed her rectal problems as an anal fistula and hemorrhoids and recommended surgery. Mrs. Zeno was told by Dr. Bleich that surgery was the only solution for her rectal problems. He told her he was going to cut out the inflamed tissue and remove the hemorrhoids. She was admitted to Lincoln General Hospital on November 2, 1969, and on that date signed a Lincoln General Hospital consent form consenting to the operation for the removal of hemorrhoids and anal fistula.
Dr. Bleich performed the operation on Mrs. Zeno on November 3, 1969 and removed the hemorrhoids, a fissure, a fistula and associated scar tissue located in the anal canal and in the external sphincter. The fissure was described by Dr. Bleich as a raw area in the anal canal. He described the fissure removed from Mrs. Zeno's anal canal as being much like a badly chapped lip and the condition would cause substantial pain particularly during bowel movements. Dr. Bleich described the fistula as a chronically infected abnormal passageway with an opening into the anal canal, the passageway ran from the anal canal into the buttock area around the anus. The fistula tract removed from Mrs. Zeno extended from her anal canal an inch and one-half into her buttock. Dr. Bleich stated: "She had chronically infected tissue with a fistula in one area and this fissure or ulcer right close by. I mean they were really almost a part and parcel of the same thing."
The drainage and infection from the fistula in Mrs. Zeno's rectum over the long period of time caused inflammation, infection and scar tissue in the external sphincter muscle. Dr. Bleich cut from the sphincter a substantial part of the scar tissue. This muscle contributes a small part to the controlling of bowel movement.
Following the surgery Mrs. Zeno complains of continued pain and fecal incontinence. She contends these serious physical problems were caused by the negligent manner in which Dr. Bleich performed the rectal surgery.
At trial of the case plaintiffs called Dr. Roncal, a general practitioner from Jonesboro, Louisiana, whom Mrs. Zeno first consulted in November of 1977 in an attempt to obtain relief from her pain and her incontinent condition. She stated that she had seen him about twenty-five times. Dr. Roncal examined her and found a slightly relaxed sphincter. He obtained the records of her operation from Dr. Bleich. He could find no explanation for her continued pain. Dr. Roncal stated he had never seen any evidence that Mrs. Zeno was incontinent. He observed at the time he testified that he had been in the courtroom with Mrs. Zeno for four hours and she had not been incontinent during that period. He stated from his examination of Mrs. Zeno and from Dr. Bleich's operation report, he could detect no error in the manner in which Dr. Bleich performed the operation. Dr. Roncal admitted that he may have told Mrs. Zeno at the time he initially examined her that Dr. Bleich had cut her too deep but that his opinion was based upon her having described the operation to him as being solely for the purpose of removing the hemorrhoids. Dr. Roncal stated that after he reviewed the operation report reflecting that a fistula and fissure were also removed at the time the hemorrhoids were removed that he was then of the opinion that Dr. Bleich had performed the operation in a correct manner. He concurred in the opinion of Dr. Bleich that the only way the fistula could be cured was by surgical removal. Dr. Roncal referred Mrs. Zeno to Dr. John E. Ray, a proctocologist at the Ochsner Clinic in New Orleans, Louisiana, who was not called as a witness by plaintiffs, but his report was placed into evidence by defendants. Dr. Ray examined Mrs. Zeno on November 23, 1977. His examination revealed no fissure, abscess, infection or other lesion in Mrs. Zeno's rectum. He found only a mildly relaxed external sphincter. He could find no explanation for Mrs. Zeno's pain, other than "she might have a neuroma entrapped in the scar tissue in the anal region."
*1340 Mrs. Zeno called no medical witness except Dr. Roncal and Dr. Bleich, whom she called under cross-examination. Dr. Bleich testified that he possessed all the skills of a general surgeon and that he skillfully performed the operation using his best judgment. He testified that the operation was the only way to cure the fistula and that if it weren't removed that there was a possibility that Mrs. Zeno would develop septicemia. This is a condition where the infection from the fistula gets into the bloodstream and could spread throughout Mrs. Zeno's body causing many serious complications. Dr. Roncal concurred in this opinion of Dr. Bleich. Dr. Jack Tom Jackson, an outstanding and experienced surgeon from Monroe, Louisiana, who had reviewed Dr. Bleich's operating records, Dr. Ray's report, and who sat through the trial and heard the testimony of Mrs. Zeno, Dr. Roncal and Dr. Bleich, testified for the defendants that the surgery was necessary. He stated that the fistula could only be cured by surgery and that if it were not removed there was a possibility that Mrs. Zeno would develop septicemia and cancer. He stated that he had performed many similar operations wherein he removed a fistula and fissure and that he always cut completely through the external sphincter in order to leave a relaxed external sphincter as he believed this was important to prevent a recurrence of the fissure. He concluded Dr. Bleich had properly performed the essential surgery on Mrs. Zeno. He could offer no explanation for Mrs. Zeno's continued pain other than a neuroma as suggested by Dr. Ray. A neuroma is a small growth at the end of a nerve which has been injured. Dr. Jackson stated that it is impossible to avoid cutting nerves during surgery and a neuroma may result from the injured nerve and cause pain. Dr. Jackson stated there was no way to locate and remove the neuroma because it could be located at any place in the extensive scar tissue which existed in Mrs. Zeno's rectum.
The trial judge in his well written reasons for judgment concluded that Mrs. Zeno had consented to the operation and that res ipsa loquitur was inapplicable to the facts of this case. He concluded plaintiffs had failed to prove by a preponderance of evidence that Dr. Bleich lacked the knowledge or skill of a surgeon, or failed to use reasonable care, along with his best judgment in the application of his skill in the performance of the operation. He found no evidence that Mrs. Zeno sustained any injury from any negligence of Dr. Bleich.
Plaintiffs assign as error on appeal the trial judge's refusal to apply the doctrine of res ipsa loquitur and his finding that Mrs. Zeno had consented to the operation.
In the recent case of White v. McCool, 395 So.2d 774 (La.1981), the supreme court explained the burden of proof of a plaintiff in a malpractice case and the circumstances where the doctrine of res ipsa loquitur is applicable to a malpractice action. The court stated:
"The pertinent statutory provision, enacted in 1975, places upon the plaintiff in a medical malpractice action the burden of proving `the degree of care ordinarily practiced by physicians and dentists within the involved medical specialty,' R.S. 9:2794(A)(1); `that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill,' R.S. 9:2794(A)(2); and `that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care plaintiff suffered injuries that would not otherwise have been incurred,' R.S. 9:2794(A)(3). The statute also provides that `[t]he jury shall be further instructed that injury alone does not raise a presumption of the physician's or dentist's negligence,' R.S. 9:2794(C). That provision is immediately succeeded by one which stated that `[t]he provisions of this Section shall not apply to situations where the doctrine of res ipsa loquitur is found by the court to be applicable.' R.S. 9:2974(C).
Plaintiff argues that the doctrine of res ipsa loquitur is applicable and thus under R.S. 9:2794(C) the other provisions of the statute relative to plaintiff's burden do not apply. Rather, the burden is on the *1341 defendant to establish his lack of negligence.[1]
The landmark case in our jurisprudence concerning the doctrine of res ipsa loquitur is Larkin v. State Farm Mutual Automobile Ins. Co., 233 La. 544, 97 So.2d 389 (1957). Therein, we stated:
`A determination of a proper instance for application of the principle of res ipsa loquitur has been the subject of volumes of discussion by learned jurists and legal scholars, who have been at pains to point out that the maxim means only that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that the rule rests for its justification upon the common experience that accidents from such causes do not commonly occur in the absence of negligence; and that it is the lack of direct evidence indicating negligence on the part of the defendant as the responsible human cause of a particular accident which actually furnishes the occasion and necessity for invoking the rule in its strict and distinctive sense. It is generally conceded that res ipsa loquitur in no way modifies the rule that negligence will not be presumed. The application of the rule does not, therefore, dispense with the necessity that the plaintiff prove negligence, but is simply a step in the process of such proof, permitting the plaintiff, in a proper case, to place in the scales, along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence, thereby obtaining an advantage and placing on the defendant the burden of going forward with proof to offset that advantage. When all the evidence is in, the question is still whether the preponderance is with the plaintiff. All that is meant by res ipsa loquitur is `that the circumstances involved in or connected with an accident are of such an unusual character as to justify, in the absence of other evidence bearing on the subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that, unless an explanation can be given, the only fair and reasonable conclusion is that the accident was due to some omission of the defendant's duty.' [citation omitted.]
* * * * * *
`In the case of Morales v. Employers' Liability Assur. Corp., 202 La. 755, 12 So.2d 804, this Court aptly stated: `It is the duty of the plaintiff to prove negligence affirmatively; and, while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it can not be invoked.' 202 La. at page 769, 12 So.2d at page 808.'" McCool, 395 So.2d at p. 777.
The court concluded that res ipsa loquitur was inapplicable to plaintiff's claim based upon bleeding following surgical repair to plaintiff's liver cut during gall bladder surgery:
"After reviewing the records and exhibits in this case we conclude that the facts and evidence introduced do not establish a situation in which defendant's negligence is the most plausible explanation for why plaintiff was bleeding internally after the original operation. Had the facts been more self evident (i. e., a surgical instrument being left in the abdomen) or had there been produced expert or other evidence suggesting, for instance, that a sutured liver doesn't bleed absent improper suturing or improper suturing *1342 technique (the latter being something that this Court cannot divine) our conclusion would be different." McCool, 395 So.2d at p. 777 [emphasis supplied.]
Plaintiffs here contend that they have established that Mrs. Zeno has pain and is incontinent following the surgery, and that these facts strongly suggest the negligence of Dr. Bleich and for that reason the doctrine of res ipsa loquitur is applicable. Plaintiffs rely on the case of McCann v. Baton Rouge General Hospital, 276 So.2d 259 (La.1973), where it was said:
"Res ipsa loquitur is a rule of circumstantial evidence. Its application is normally determined at the conclusion of the trial. The rule applies when the facts shown suggest the negligence of the defendant as the most plausible explanation of the injury." [citations omitted.] Id. at 261. [emphasis supplied.]
The fact that Mrs. Zeno has pain which she describes as being in her rectum and also as being in her back and in her right hip and right leg, does not establish an injury for which the most plausible explanation is the negligence of Dr. Bleich in performing the operation. Drs. Ray, Roncal, Bleich and Jackson all expressed the opinion that an explanation for the pain in the rectum could be the fact that nerves had been severed during surgery causing the formation of a neuroma in some of the scar tissue which is a result of the surgery. All of the doctors who testified at trial stated that when surgery is performed the severing of nerves, many of which are so small that they cannot be seen, is unavoidable. Mrs. Zeno testified that she had been advised by a doctor in Shreveport, who was an orthopedic, that she had a diseased disc and this could be a possible explanation of Mrs. Zeno's pain. We conclude that the most plausible explanation for Mrs. Zeno's pain is not that Dr. Bleich was negligent in performing her operation, and the existence of her pain does not trigger the application of the doctrine of res ipsa loquitur.
At one point in their brief plaintiffs seem to state that they are not contending that pain is a fact suggesting the negligence of Dr. Bleich, but rather they are contending the injury complained of which suggests the negligence of Dr. Bleich is "trauma inside the anal canal." The only trauma inside the anal canal which was established was the intentional surgery which was essential to the treatment of Mrs. Zeno's rectum and this certainly cannot be categorized as a "fact shown which suggests the negligence of the defendant (Dr. Bleich) as the most plausible explanation of the injury."
Plaintiffs strongly contend that as result of the operation Mrs. Zeno suffers from fecal incontinence and that this is a fact "shown which suggests the negligence of defendant (Dr. Bleich) as the most plausible explanation of the injury." The term incontinence is defined as "inability to control excretory functions" and Mrs. Zeno testified that she had absence of control of her excretory functions to the extent that she soiled her underclothes. She stated that she did not soil her bed, and gave no indication that her condition was severe enough to soil her outer garments. The fact that she was seen by Dr. Roncal twenty-five times subsequent to November 1977, and that he had never seen any evidence of her incontinence, strongly suggests that her problem was not a serious one, and it is abundantly clear that she does not suffer from total incontinence. The explanation for her degree of incontinence is that the external sphincter, which plays a small part in the control of fecal excretion, was seriously damaged by the long period of rectal infection which created scar tissue on the sphincter which had to be removed at the time of surgery. Dr. Bleich hoped that the sphincter tone would improve following surgery, but the evidence established that it remains mildly relaxed. This injury to the external sphincter by the infection and the corrective surgery is the most plausible explanation of Mrs. Zeno's mild incontinence. Neither the existence of Mrs. Zeno's pain nor her incontinence justifies the application of the doctrine of res ipsa loquitur. These circumstances establish only that Mrs. Zeno failed to obtain a completely satisfactory result from her surgery and McCann, supra, stated this alone would not justify the application of res ipsa loquitur. The court there said:

*1343 "In so holding, we in no way sanction the application of res ipsa loquitur to malpractice cases involving no more than a failure to obtain the satisfactory results from surgery or medical treatment. We limit our holding to untoward or unusual occurrences during the time of medical supervision." Id. 276 So.2d at 262.
Plaintiffs offered no evidence to sustain their burden of proof as required by LSA-R.S. 9:2794(A), but they contend that even though they failed to meet the burden of proof required to establish their malpractice action under this statute, they are still entitled to recover because Mrs. Zeno failed to give her informed consent to the surgery. The thrust of this contention is that Dr. Bleich failed to advise Mrs. Zeno that she could have continued pain and fecal incontinence following the surgery. The record contains a consent form signed by Mrs. Zeno wherein she consented to the operation acknowledging she had been advised of the risks involved in the surgery and possible complications resulting from it. Mrs. Zeno denied that she was advised of the possibility of continued pain or incontinence following the operation. Dr. Bleich's testimony is generally to the effect that he advised Mrs. Zeno of the nature of the surgery, but it does not contain a positive statement by him that he advised her of the possibility that she could have pain and incontinence following the surgery.
In the case of Percle v. St. Paul Fire & Marine Ins. Co., 349 So.2d 1289 (La.App. 1st Cir. 1977), the court recognized that a surgeon will be liable to his patient if he obtains his consent to surgery without revealing the risk of the surgery if a prudent person in the patient's position would have decided to decline the surgery upon being advised of complications that could result from this surgery. The court there stated the law to be:
"We consider as sound Appellant's argument that the duty to disclose should be governed by the legal standard of negligence which includes an objective test in establishing causation, meaning what a prudent person in plaintiff's position would have decided if adequately informed." Id. at p. 1300.
Percle quoted with approval the following rationale from Cantebury v. Spence, 150 U.S.App.D.C. 263, 464 F.2d 772 (1972):
"Better it is, we believe, to resolve the causality issue on an objective basis: in terms of what a prudent person in the patient's position would have decided if suitably informed of all perils bearing significance. If adequate disclosure could reasonably be expected to have caused that person to decline the treatment because of the revelation of the kind of risk of danger that resulted in harm, causation is shown, but otherwise not." Id., 349 So.2d at 1301.
Assuming that Dr. Bleich failed to advise Mrs. Zeno that she could have pain after her surgery because nerves that would be cut during surgery might become imbedded in scar tissue, and that she might have some incontinence because of necessary surgical damage to the external sphincter, is the consent obtained defective? Percle makes it clear that Mrs. Zeno's consent to the surgery is still good if a prudent person having been advised of these risks would have consented to the surgery. In this case because surgery was essential to avoid the possibility that the fistula would cause septicemia or cancer if it were not removed, a prudent person would have consented to the surgery upon being advised of these risks. We conclude that there was no defect in the consent given by Mrs. Zeno for the surgery and plaintiffs cannot assert a cause of action based upon lack of consent.
Having found that Mrs. Zeno consented to the surgery, that res ipsa loquitur is inapplicable to the facts, and that plaintiffs failed to establish that Dr. Bleich did not possess all the skill of his medical specialty of general surgery and that he did not apply his skill with care and good judgment in the operation he performed on Mrs. Zeno, we find the judgment should be affirmed. It is unnecessary for us to discuss appellants' assignment of error that the trial judge incorrectly concluded that appellants' failure to call Dr. A. E. McKeithen as a witness created a presumption that he would have testified against her.
AFFIRMED at appellants' cost.
NOTES
[1] We have omitted the supreme court footnote wherein the statute discussed was quoted in its entirety.