520 So.2d 457 (1988)
Betty Jean JONES
v.
Russell LEVY, M.D.
No. 87-CA-677.
Court of Appeal of Louisiana, Fifth Circuit.
February 8, 1988.
Rehearing Denied March 17, 1988.
Writ Denied May 6, 1988.
Reconsideration Denied May 20, 1988.
*458 Edmond R. Eberle, New Orleans, for plaintiff-appellant.
Thomas, Hayes and Beahm, Lloyd W. Hayes, New Orleans, for defendant-appellee.
Before CHEHARDY, GAUDIN and DUFRESNE, JJ.
CHEHARDY, Chief Judge.
This is a suit in which plaintiff, Betty Jean Jones, seeks damages against Dr. Russell Levy for medical malpractice which allegedly occurred during the course of a lumbar laminectomy operation. The case was tried before a judge who dismissed plaintiff's claim. She appeals.
Dr. Levy performed a lumbar laminectomy on plaintiff on December 11, 1979. While in recovery plaintiff experienced abdominal pain, a drop in blood pressure and an increased pulse rate. Dr. Levy consulted Dr. Warren Gottsegen, a vascular surgeon, who determined that plaintiff was experiencing internal bleeding. She was returned to the operating room where Dr. Gottsegen performed emergency exploratory abdominal surgery.
Dr. Gottsegen repaired rents in the iliac artery and vein by performing an iliac femoral bypass graft. He testified that plaintiff's iliac artery and vein were bound to plaintiff's vertebral column by extensive adhesions and scar tissue which apparently resulted from a prior hysterectomy. He further testified that this is an abnormal condition which could not be identified without surgically exploring plaintiff's abdomen.
Subsequently plaintiff filed suit against Dr. Levy alleging negligence on the part of the doctor resulted in her vascular injury.
Plaintiff appeals the dismissal of her suit arguing the trial court erred in finding (1) the doctrine of res ipsa loquitur inapplicable, (2) no negligence on part of Dr. Levy, and (3) Dr. Levy obtained a valid consent from plaintiff.
*459 In our jurisprudence the landmark case concerning the doctrine of res ipsa loquitur is Larkin v. State Farm Automobile Ins. Co., 233 La. 544, 97 So.2d 389, 391-92 (1957), which states:
"[T]he principle of res ipsa loquitur * * * means only that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that the rule rests for its justification upon the common experience that accidents from such causes do not commonly occur in the absence of negligence; and that it is the lack of direct evidence indicating negligence on the part of the defendant as the responsible human cause of a particular accident which actually furnishes the occasion and necessity for invoking the rule in its strict and distinctive sense. It is generally conceded that res ipsa loquitur in no way modifies the rule that negligence will not be presumed. The application of the rule does not, therefore, dispense with the necessity that the plaintiff prove negligence, but is simply a step in the process of such proof, permitting the plaintiff, in a proper case, to place in the scales, along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence, thereby obtaining an advantage and placing on the defendant the burden of going forward with proof to offset that advantage. When all the evidence is in, the question is still whether the preponderance is with the plaintiff. All that is meant by res ipsa loquitur is `that the circumstances involved in or connected with an accident are of such an unusual character as to justify, in the absence of other evidence bearing on the subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that, unless an explanation can be given, the only fair and reasonable conclusion is that the accident was due to some omission of the defendant's duty.' [Footnote omitted.]
* * * * * *
"In the case of Morales v. Employers' Liability Assur. Corp., 202 La. 755, 12 So.2d 804, this Court aptly stated: `It is the duty of the plaintiff to prove negligence affirmatively; and, while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it can not be invoked.' 202 La. at page 769, 12 So.2d at page 808."
In the instant case the facts and evidence do not establish a situation in which defendant's negligence is the most plausible explanation for plaintiff's injury. The medical evidence shows that this type of injury can occur in the absence of substandard care. Therefore, the doctrine of res ipsa loquitur is not applicable.
In situations where the doctrine of res ipsa loquitur is found by the court to be inapplicable the provisions of LSA-R.S. 9:2794 apply. R.S. 9:2794(c).
Because Dr. Levy practiced medicine in the specialized field of orthopedic surgery, the plaintiff had the burden of proving that Dr. Levy either lacked the requisite degree of knowledge or skill ordinarily possessed by other orthopedic surgeons, or that he failed to use reasonable care and diligence, along with his best judgment in the application of that skill. LSA-R.S. 9:2794; Ardoin v. Hartford Accident and Indemnity Company, 360 So.2d 1331 (La.1978).
Experts for both plaintiff and defendant agree there was no negligence in pre-operative or post-operative care. The only issue of negligence raised is whether Dr. Levy negligently inserted a surgical instrument through the disc space, thereby injuring plaintiff's iliac artery and vein.
Dr. Levy testified that early in the surgery he applied pressure to a surgical instrument called a rongeur in an effort to enter plaintiff's relatively tight disc space.
*460 Once he penetrated the bone he experienced none of the resistance usually caused by the material within the disc. Approximately one-and one-half inches of the rongeur entered the disc space with no resistance. The resistance was lacking because the disc material was abnormally watery. At that time Dr. Levy suspected that he had gone completely through the disc and entered the abdominal cavity. There was no drop in plaintiff's blood pressure or increased bleeding. Dr. Levy then inserted a surgical instrument called a sucker into the same area the rongeur had entered. He got no bloody return with the sucker. The rest of the surgery proceeded normally. Dr. Levy testified that he was not sure that anything had gone wrong until plaintiff started to have difficulties while in recovery.
In the opinion of plaintiff's expert, Dr. Ralph Bender, Dr. Levy was negligent simply because he passed an instrument beyond the disc space causing damage to the blood vessels. Dr. Bender testified that his policy is to enter no more than one-half inch into the disc space with the ronguer.
The medical review panel before whom this matter came rendered a unanimous decision finding Dr. Levy did not violate the appropriate standard of care for an orthopedist under these circumstances.
Dr. Jack Winters, one member of the review panel, testified that the panel carefully reviewed the case and found no negligence on behalf of Dr. Levy. He testified that a rongeur can go beyond the disc space if one is exercising the utmost diligence while asserting a normal amount of forward pressure and there is an anatomical abnormality in which there is no resistance within the disc space. He stated that the absence of resistance could not have been anticipated. He further noted that the iliac artery and vein were deformed due to adhesions and scarring anchoring the vessels to the spinal column. Both he and the panel were of the opinion that Dr. Levy was using due diligence in his pursuit of removing the disc. Dr. Winters further testified that Dr. Bender's rule to go no deeper than one-half inch into the disc space was a view held by a "gross minority" of orthopedic surgeons.
Dr. John Jackson, a neurosurgeon, also found no breach of the standard of care on behalf of Dr. Levy. He testified that in performing approximately 5,000 lumbar laminectomies he has, at times, gone through the disc space and no injury has resulted. In his opinion a normal vein should not bleed under these circumstances. In his view, Dr. Levy's use of the sucker was also appropriate. He testified that plaintiff's injury was due to the abnormal condition of her blood vessel. Further, he disagreed with Dr. Bender's one-halfinch rule stating that such would result in a recurrent surgery rate of more than 15%.
We find no manifest error in the trial court's finding that Dr. Levy was not negligent. Absent such a finding we are compelled to affirm. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The issue of informed consent is governed by LSA-R.S. 40:1299.40, the Uniform Consent Law, which states in part:
"A Notwithstanding any other law to the contrary, written consent to medical treatment means a consent in writing to any medical or surgical procedure or course of procedures which (a) sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, of disfiguring scars associated with such procedure or procedures, (b) acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner, and (c) is signed by the patient for whom the procedure is to be performed, or if the patient for any reason lacks legal capacity to consent by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts."
The Supreme Court in LaCaze v. Collier, 434 So.2d 1039 (La.1983), concluded that *461 the above statutory language has superseded the jurisprudential rules defining consent to medical treatment. If a consent is found to be deficient pursuant to this statute a plaintiff must then "prove that the failure to inform caused the damaging consequences. If the plaintiff would have undertaken the treatment in any event, in spite of the deficient `informed consent,' there could be no recovery." Id. at 1048.
Evidence reflects that plaintiff signed a written consent in the presence of hospital personnel. The possibility of vascular injury was not included in that consent and Dr. Levy testified that he did not inform plaintiff of that risk.
Considering the plaintiff's pre-operative condition, the nature of the surgery, and the testimony and evidence adduced, and granting, arguendo, that consent to the surgery may be deficient in that respect, plaintiff has failed to show that a reasonable person in her position would have withheld consent if Dr. Levy had advised her of the possibility of vascular injury. In all other aspects, the consent clearly complies with the statutory requirements. Therefore, we find no error on behalf of the trial court.
For the foregoing reasons, the judgment of the trial court is affirmed. Each party is to pay his own costs.
AFFIRMED.