528 So.2d 1057 (1988)
Mario Rene FUNEZ, Natural Tutor for Ellis J. Funez
v.
JEFFERSON PARISH SCHOOL BOARD.
No. 88-CA-117.
Court of Appeal of Louisiana, Fifth Circuit.
June 28, 1988.
*1058 H. Edward Sherman, New Orleans, for Mario Rene Funez, natural tutor for Ellis Funez, plaintiff-appellant.
Frederick A. Miller & Associates, Frederick A. Miller, Metairie, for Jefferson Parish School Bd. and Hartford Acc. and Indem. Co., defendants-appellees.
Before CHEHARDY, C.J., and GAUDIN and GRISBAUM, JJ.
CHEHARDY, Chief Judge.
The father of a child suffering from mental retardation and cerebral palsy instituted this litigation against the Jefferson Parish School Board to recover damages for personal injuries sustained by his son, Ellis Funez, resulting in a broken tooth. Hartford Accident and Indemnity Company was the general liability insurer of the school board. The Louisiana Department of Health and Human Resources intervened seeking reimbursement of the cost of medical care rendered to the child as a result of the injury. Upon a finding of no negligence on behalf of the school board, the trial court dismissed plaintiff's claim. Plaintiff appeals the judgment.
On appeal plaintiff argues the trial court erred in finding the school board met its duty of care in handling the child, in finding no negligence on behalf of the school board and in not applying the doctrine of res ipsa loquitur.
The evidence reflects that Ellis Funez has suffered with mental retardation and cerebral palsy since 18 days after his birth on November 8, 1976. The cerebral palsy causes involuntary movements of his head, arms and legs. Additionally, he is unable to communicate.
On April 16, 1985, Ellis Funez was enrolled in Julien Percy School, a special school for low-incident handicapped children operated by the Jefferson Parish School Board. He arrived at school by school bus, seated in his wheelchair and restrained by a harness.
He was met by Ursula Thompson, his teacher, and Clara Neal, Ms. Thompson's aid. Ms. Neal removed him from the bus and escorted him to the school cafeteria, where he remained, seated next to Ms. Neal, for 15 to 30 minutes. Ms. Neal testified that he did not get close enough to a table or chair to bump his mouth and that she saw no blood on his mouth or swelling of his lips. She did not view Ellis' teeth.
At approximately 8:30 a.m., Ursula Thompson took Ellis and another child to her classroom. Ellis was still in his wheelchair. The other child was in a stroller. Ms. Thompson pushed one child while pulling the other. Upon arriving at her classroom, Ms. Thompson removed Ellis from his wheelchair, placed him on a soft mat on the floor and changed his diaper. She noticed nothing unusual about his appearance. She then removed the other child *1059 from her stroller and placed her in a crib. Shortly before 9 a.m. she noticed a little blood on Ellis' mouth. She applied a wet compress but did not open Ellis' lips. On prior occasions Ellis had demonstrated the same symptoms after biting his lip or cutting it on a tooth. Ms. Thompson saw no swelling of the lips.
Later that morning Jan Daniels, an occupational therapist, entered the classroom and noticed blood on Ellis' lips. Subsequently, while handling Ellis in his adaptive physical education class, Ms. Daniels observed the broken tooth. This was the first time the school personnel viewed Ellis' teeth. The broken tooth was reported to Ms. Thompson, who notified Ellis' mother of the child's condition.
Expert testimony reflects that Ellis Funez suffered a fracture of the maxillary right permanent center incisor necessitating a root canal and restorative work. The cause of the fracture could not be identified by the experts. Dr. Kenneth Troutman, an expert in pediatric dentistry specializing in handicapped children, stated that it was probably caused by a traumatic blow to the lip.
Dr. Troutman further testified that swelling of the lip would have occurred within minutes of the break. He noted that Ellis has a classic mal occlusion found in children with spastic cerebral palsy. This condition causes the teeth to protrude and be more prone to traumatic injury. Due to Ellis' condition, treatment was unusually long and difficult.
Plaintiff relies on the testimony of Ellis' mother, Victoria Suyapa Funez, that Ellis' tooth was not broken when he left his home for school on April 16, 1985. She allegedly cleaned Ellis' teeth that morning and observed no problem with his lips or mouth.
Plaintiff suggests Ellis' injury was sustained when he was negligently moved by Ms. Thompson from his wheelchair to the floor mat. Testimony reflects that Ms. Thompson completed this task alone. Plaintiff alleges this constitutes a breach of the school board's duty of care in handling Ellis. In support of this they allege two persons were necessary to lift this child from his wheelchair and place him on his mat. They rely on the testimony of school personnel that indicated that, in order to prevent injury to the teachers, two persons were used to lift some children.
Ms. Thompson testified that no mishap occurred when she moved Ellis and that she does not know how or when his tooth was broken. The testimony of Patricia Brothers, the principal of Percy Julian School, reflects that at the time of the accident it was proper procedure for one individual to lift a child from a chair.
A finding of negligence on behalf of defendant requires, through the application of a "duty-risk" analysis, that plaintiff prove a cause-in-fact, a duty imposed on the defendant to protect the plaintiff from this particular risk, a breach of that duty and damages. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). These elements must be proved by a preponderance of the evidence.
A trial court's factual findings are given great weight on appellate review and may not be modified absent a finding of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). In this case the trial judge found that "a uniformly higher degree of care was accorded the Funez child" and found no showing of negligence on behalf of the school board or its supervisors, teachers or employees. We find no manifest error in these findings.
Plaintiff further alleges the doctrine of res ipsa loquitur is applicable to these facts.
In our jurisprudence the landmark case concerning the doctrine of res ipsa loquitur is Larkin v. State Farm Mutual Automobile Ins. Co., 233 La. 544, 97 So.2d 389, 391-92 (1957), which states:
"[T]he principle of res ipsa loquitur * * * means only that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that the rule rests for its justification upon the common experience that accidents from such causes do not commonly *1060 occur in the absence of negligence; and that it is the lack of direct evidence indicating negligence on the part of the defendant as the responsible human cause of a particular accident which actually furnishes the occasion and necessity for invoking the rule in its strict and distinctive sense. It is generally conceded that res ipsa loquitur in no way modifies the rule that negligence will not be presumed. The application of the rule does not, therefore, dispense with the necessity that the plaintiff prove negligence, but is simply a step in the process of such proof, permitting the plaintiff, in a proper case, to place in the scales, along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence, thereby obtaining an advantage and placing on the defendant the burden of going forward with proof to offset that advantage. When all the evidence is in, the question is still whether the preponderance is with the plaintiff. All that is meant by res ipsa loquitur is `that the circumstances involved in or connected with an accident are of such an unusual character as to justify, in the absence of other evidence bearing on the subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that, unless an explanation can be given, the only fair and reasonable conclusion is that the accident was due to some omission of the defendant's duty.' [Citation omitted.]

* * * * * *
"[I]n the case of Morales v. Employers' Liability Assur. Corp., 202 La. 755, 12 So.2d 804, this Court aptly stated: `It is the duty of the plaintiff to prove negligence affirmatively; and, while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it can not be invoked.' 202 La. at page 769, 12 So.2d at page 808."
Where no direct evidence adequately explains the event, the circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. King v. King, 253 La. 270, 217 So.2d 395 (1968); McCann v. State Farm Mut. Auto. Ins. Co., 483 So.2d 205 (La.App. 3 Cir.1986).
A review of this record does not reflect the alleged negligence of defendant excluded every other reasonable hypothesis as to the cause of the accident. Ellis' physical condition, including his protruding teeth and involuntary movements, indicate that such an accident could occur where no negligence existed on behalf of defendant. Therefore, the doctrine of res ipsa loquitur is not applicable.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be paid by appellant.
AFFIRMED.